John J. ADKINS, et al., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

No. C–3–82–011.

United States District Court, S.D. Ohio, W.D.

April 15, 1983.

Irving I. Saul, Dwight D. Brannon, Dayton, Ohio, for plaintiffs.

Richard F. Rice, Kittering, Ohio, Joseph P. Buchanan, Dayton, Ohio, Carole W. Wilson, Washington, D.C., J.R. Wheatley, Detroit, Mich., for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OVERRULED; DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, ON FEDERAL CLAIMS, CONDITIONALLY SUSTAINED; COURT DECLINES TO EXERCISE PENDENT JURISDICTION OVER STATE CLAIMS; STATE CLAIMS DISMISSED; FURTHER PROCEDURES REQUIRED OF COUNSEL UPON RENDERING OF CERTAIN SUPREME COURT DECISIONS

RICE, District Judge.

This case involves complex and difficult questions of law and policy concerning actions brought under federal labor statutes. Plaintiffs, former employees of Defendant General Motors Corporation (GMC), and members of Defendant Local 801 of the Defendant International Union of Electrical, Radio and Machine Workers, AFL–CIO (IUE), and a number of their spouses, have brought suit against the company and the unions under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and under § 101(a)(1) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1). Plaintiffs claim that the unions breached their duty of fair representation, and that GMC breached certain labor contracts, in the negotiation and implementation of certain collective bargaining agreements. Most of the Plaintiffs claim they lost jobs at GMC plants due to these breaches. They seek relief in the form of damages and reinstatement.

The automobile industry has been particularly hard hit by the current recession. In these difficult economic times, one must empathize with the plight of the Plaintiff union members; most have lost jobs, probably forever, at GMC, and may have had difficulty obtaining comparable employment in the Dayton area, or anywhere else. Defendants, in contrast, assert that they sought to save as many jobs as possible in implementing the challenged collective bargaining agreements. At the time, GMC was phasing out the unprofitable Frigidaire appliance section, and placing employees in the remaining automotive divisions. Should the Plaintiffs prevail and obtain their requested relief, Defendants argue, many *current* GMC employees will be deprived of *their* jobs, and operations at GMC plants in the Dayton area will be disrupted.

Against this background, GMC (Doc. # 41), and the Defendant Unions (Doc. # 41) [1] have moved for summary judgment, primarily on the grounds that (1) the actions are barred by the applicable statute of limitations, and (2) there are no facts indicating that the unions breached their duty of fair representation. Plaintiffs have moved (Doc. # 54) for partial summary judgment on their LMRDA claim. Oral argument was had on these motions on March 24, 1983.

The Court disposes of these matters as follows: Part I of the opinion summarizes the factual background and procedural posture of this case. Part II addresses, and overrules, Plaintiffs' motion for partial summary judgment. In Part III, the Court addresses the statute of limitations defenses for both the § 301 and § 101 actions. Acknowledging the difficulty of the legal questions presented, the Court determines that the most applicable statute of limitations is the six-month period found in

---

**1.** The Court states that it will consider Defendants' memoranda accompanying their motions, despite the fact that same are over fifteen pages in length, and were not properly filed with an index pursuant to S.D.Ohio R. 4.0.3.

§ 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). Having found that the causes of action accrued, at the latest, in January of 1981, applying the six-month statute bars these actions brought in January of 1982. Finally, in Part IV, the Court sustains Defendants' motions, but will not enter judgment on same until the United States Supreme Court renders decisions on two cases pending in the 1982 Term. Should the Supreme Court decisions invalidate, in whole or in part, the reasoning of the decision, this Court will vacate same and conduct further appropriate proceedings. Should the rulings not affect this decision, judgment will be entered for the Defendants on the federal claims, and the balance of the state law claims will be dismissed.

## I. OVERVIEW OF THE CLAIMS

Defendants earlier moved to dismiss the original and first amended complaints. In a Decision and Entry (Doc. # 35), this Court sustained in part, and overruled in part, those motions. Solely for the purpose of adding almost 200 additional plaintiffs, the Court permitted (Doc. # 42) plaintiffs to file a second amended complaint. Said filing was permitted with the understanding that the aforementioned motions would be treated as applying to the second amended complaint as well. Based on the earlier decision, the motions, as applied to the second amended complaint, were similarly sustained in part and overruled in part (Doc. # 44). The effect of those latest rulings are summarized below.

Named as Plaintiffs in the second amended complaint are some 489 employees and former employees of the Delco Air Conditioning Division of GMC (numbered 1 through 342, and 601 through 747 in the second amended complaint), and some 327 of their respective spouses (numbered 343 through 600, and 747 through 817 in said complaint). Briefly, the relevant allegations are as follows: the employee plaintiffs were working at GMC's Frigidaire Division (now closed). Pursuant to a "Bridge Agreement" between Frigidaire and Local

801, dated December 10, 1976, that group had the right to transfer to GMC's Delco Division. Plaintiffs were members of a group who elected to transfer to Delco. They so transferred, they allege, with the "implied understanding" that their accumulated Frigidaire seniority would be preserved in their post-Frigidaire tenure. Two new collective bargaining agreements, entered into in February and September of 1979, substantially modified the "bridge" agreement. These agreements provided for the transfer of Frigidaire employees to the newly operational Moraine truck plants, and for the recall of laid off Frigidaire— but not Delco—employees. Plaintiffs allege that the IUE and Local 801 violated their duty of fair representation, and that GMC violated implied obligations in the Bridge Agreement, through these various acts. They also assert that the manner in which the IUE and Local 801 conducted ratification votes on the 1979 agreements violated the LMRDA. Four state law claims were also advanced.

The Court, in its earlier Decision, dismissed the federal claims of the spousal plaintiffs and two state law claims in their entirety. Retained were the federal claims of the employee plaintiffs, the infliction of mental distress claims of the spousal plaintiffs (with respect to the unions), and the loss of consortium claims of the spousal plaintiffs.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IS OVERRULED

■ Plaintiffs have moved for partial summary judgment on their claim that the union's ratification of the 1979 agreements violated § 101(a)(1) of the LMRDA. Given the Court's ultimate conclusion that Plaintiffs' LMRDA § 101 and LMRA § 301 claims are time-barred, this motion is, in effect, moot. However, to complete the record, the Court will proceed to rule on said motion.

Section 101(a)(1) states that:

Every member of a labor organization shall have equal rights and privileges

within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws. Any person may bring suit under § 102 of the LMRDA, 29 U.S.C. § 412, for violations of § 101.[2] While § 101, on its face, only prohibits unequal treatment of union members, the section has been interpreted to create a generalized right to cast a "meaningful," or a "reasoned and informed" vote. *See, Nienaber v. Ohio Valley Carpenters District Council*, 652 F.2d 1284, 1286 (6th Cir.1981); *Blanchard v. Johnson*, 532 F.2d 1074, 1079 (6th Cir.1976), *cert. denied*, 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976); *Parker v. Teamsters Local 413*, 501 F.Supp. 440, 445 (S.D.Ohio 1980), *aff'd without published opinion*, 657 F.2d 269 (6th Cir.1981).

Plaintiffs assert in their motion that they were deprived of such an "informed" vote for the February 22, 1979, election, principally due to the failure of the February 21, 1979, issue of the "801 News" to indicate that employees, in the positions of Plaintiffs, would be adversely affected by the vote. Defendants, in their memoranda contra this motion (Docs. # 59 & 62), argue that disputed issues of material fact remain on whether or not Plaintiffs had an informed vote on the aforementioned date, making inappropriate the sustaining of Plaintiffs' motion.

The Court finds Defendants' position to be well taken. It is unnecessary to adopt

their broad argument that the "entire circumstances" of the negotiations and ratification of the 1979 agreements must be examined in order to determine the presence of a meaningful vote. Alternatively, Defendants point out that the Plaintiff employees were given full notice of the February 22, 1979, meeting, and had an unimpaired opportunity to attend and to ask questions at same. Affidavit of Carole Wilson, Doc. # 61, and documents attached thereto. Moreover, they contend that, on its face, the disputed issue of the "801 News" contains no misleading or erroneous statements. Based on these factual assertions, the Court holds that the nature of a "meaningful" or "informed" vote by Plaintiffs is a genuine issue of material fact. Accordingly, Plaintiffs' motion for summary judgment on the LMRDA claim is overruled. Fed.R.Civ.P. 56(c); *Board of Educ. v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, ON FEDERAL CLAIMS, SUSTAINED ON STATUTE OF LIMITATIONS GROUNDS

Defendants advance two grounds in support of their motions for summary judgment: (1) the federal claims [3] are time-barred for having been filed outside the applicable state statute of limitations, and (2) the Rule 56 materials on record indicate that the Defendant unions, as a matter of law, did not violate their duty of fair repre-

2. GMC correctly points out, Memorandum Contra, Doc. # 62, p. 4, that § 101(a)(1) imposes no obligation on nor creates a cause of action against employers. *See, American Postal Workers Local 6885 v. American Postal Workers Union*, 665 F.2d 1096, 1109 n. 26 (D.C.Cir.1981) (citing cases). Thus, Plaintiffs' motion can only seek judgment against the Defendant unions.

3. The entirety of Defendants' limitations arguments, and Plaintiffs' response thereto, are directed to LMRA § 301. However, the Court will assume that Defendants seek dismissal of the LMRDA § 101 claim on limitations grounds, as

well. This assumption is derived from the Defendants' Unions' answers (Docs. # 5 & 13) to the original and first amended complaints, which set forth the affirmative defenses that the claims, in general, were barred by the applicable limitations period. Moreover, said Defendants' motion for summary judgment also speaks in such general terms, Doc. # 40, pp. 1, 5, 17 n. 17. Thus, the Court assumes that all three Defendants seek to apply a limitations period to *all* the federal claims, and that Plaintiffs had sufficient notice of the raising of such an affirmative defense.

sentation toward the Plaintiffs. The Court finds the first ground to be well taken and dispositive of the lawsuit, and thus finds it unnecessary to address the second ground advanced in support of the motion. Both federal claims (LMRDA § 101 and LMRA § 301) will be dismissed on statute of limitations grounds; the remaining state law claims will also be dismissed, in the exercise of this Court's discretionary pendent jurisdiction.

In this section, the Court will first address, and reject, Plaintiffs' argument that the violations of federal labor laws are "continuing" up till the present day. Next, the Court will address, and reject, Defendants' arguments that certain of the reasoning of *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982) strictly applies to this case. Lastly, having determined that there is no appropriate Ohio statute of limitation to apply to this case, the Court finds that the six-month statute found in § 10(b) of the NLRA provides the most appropriate limitation period to apply, based on the facts of this case.

## A. ACCRUAL OF CAUSES OF ACTION

■ At the outset, Plaintiffs argue that choosing and applying an applicable statute of limitations to the federal claims in this case is, in effect, irrelevant, since they have asserted "continuing" violations [4] of LMRA § 301.[5] The general rule appears to be that a § 301 action accrues no later than the time Plaintiffs "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." *Santos v. District Council of New York City*, 619 F.2d 963, 969 (2d Cir.1980). In a § 301 suit, it is proper to consider that a claim accrues against the company defendant when it accrues against union defendants, since the predicate for a typical § 301 action against an employer is proof that the union breached its duty of fair representation. *Bowen v. United States Postal Service*, — U.S. —, — – —, 103 S.Ct. 588, 594–95, 74 L.Ed.2d 402 (1983); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). *See also, Butler v. Teamsters Local 823*, 514 F.2d 442, 450 (8th Cir.1975), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). *See generally, Rose v. General Motors Corp.*, 573 F.Supp. 747 at 752 (S.D.Ohio 1983).[6]

Applying these principles to the allegations in the second amended complaint, and to facts evident from the Rule 56 materials on record, reveals that Plaintiffs' causes of action accrued, *at the latest*, in January of 1981. As previously indicated, Plaintiffs base their causes of action on the imple-

---

**4.** *Cf. West v. ITT Continental Baking Co.*, 683 F.2d 845, 846 (4th Cir.1982) (raising but not deciding issue of whether "continuing violation" theory should be confined to cases under Title VII of the Civil Rights Act of 1964 or should also apply to LMRA § 301 cases).

**5.** Plaintiffs do not explicitly argue that the alleged violation of LMRDA § 101 is also "continuing" in nature, perhaps because such an argument cannot logically be made. A cause of action based on alleged improper election would, of course, presumably accrue on either (1) the date of the election, or (2) when Plaintiffs ascertained the improper nature of the election. For the sake of argument, the Court will assume that the LMRDA claim accrued at roughly the same time the LMRA claim accrued. The Court also notes that it has been unable to find published authority explicitly discussing the accrual of actions under LMRDA §§ 101–102. However, as further discussed in the text,

*infra*, a statute of limitations must be borrowed for LMRDA claims, and courts which have done so have followed the principles laid down in cases applying limitation periods to LMRA § 301 claims. *See, e.g., Howard v. Aluminum Workers International Union*, 589 F.2d 771, 773 (4th Cir.1978). *See also, Newton v. Electrical Workers Local 801*, 507 F.Supp. 439, 441–42 (S.D.Ohio 1980), *aff'd*, 684 F.2d 401 (6th Cir. 1982).

**6.** In *Rose*, at 751 n. 3, this Court pointed out that the Sixth Circuit, *Echols v. Chrysler Corp.*, 633 F.2d 722, 725–26 (6th Cir.1980), apparently views the accrual question to be a matter of *state* law, while other circuits, *e.g., Santos, supra*, 619 F.2d at 968, view it to be a *federal* issue. This disparity is of no consequence, since Ohio law regarding accrual of actions is consistent with analogous federal law. *Rose, supra*, at 751–52.

mentation and enforcement of certain agreements between the Defendants in 1979. Plaintiffs further allege that their layoffs, due to said agreements, were "substantially" complete by late 1979, ¶ 38, that some Plaintiffs questioned the President of Local 801 about the reasons for said layoffs in February of 1980, ¶ 39, and that since July of 1980, there have been "ongoing petitioning endeavors" among the Plaintiffs to discuss their failure to "be included in the pool of ex-Frigidaire employees from which the Chevrolet plant job openings would be filled." ¶ 41. Finally, Plaintiffs allege that they have made "repeated inquiries" to Local 801 officials regarding their "expectations" of jobs at the Chevrolet/Moraine plants, ¶ 50, that by January of 1981, the first month of operations at said plants, "it became obvious" to Plaintiffs that they were "being bypassed," ¶ 42, a situation confirmed by at least one Local 801 official in the "Spring of 1981." *Id.* These contentions are reiterated by at least one of the Plaintiff employees in his deposition testimony, summarized at Doc. # 41, pp. 12–13.[7]

Under these facts, Plaintiffs were aware, or reasonably should have been aware, that their (alleged) rights to jobs had been impaired by January of 1981, *at the latest.* In other words, they realized, or should have realized, that they had been damaged, (*i.e.,* lost job recall rights) by the actions of the unions and company by early 1981; arguably, that realization came, or should have come, by early or mid-1980. It follows that Plaintiffs' actions under LMRA § 301 accrued by January of 1981.

These facts cannot support a "continuing violation" theory. In the Title VII context, note 4, *supra,* a typical "continuing violation" is the receipt of checks from an employer paying discriminatory wages. *E.g., Hall v. Ledex, Inc.,* 669 F.2d 397, 398 (6th Cir.1982). No similar analogy can be drawn from the facts of this case. Plaintiffs were damaged, at the latest, in January of 1981 when they realized (or should have realized) that their job recall rights had been impaired. No further acts by the unions or company defendants are necessary to further complete or amplify such damages. Once the original damage is lodged, the mere fact that the Defendants are "continuing" to implement allegedly improper collective bargaining agreements does not convert Plaintiffs' loss of jobs into a "continuing violation." *Cf. Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (42 U.S.C. § 1981 and Title VII case); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (Title VII case). An accrual date can be fixed in this case, and the union's wrong cannot be said to continue indefinitely. *See, Jenkins v. General Motors Corp.,* 354 F.Supp. 1040, 1047 (D.Del.1973); *Falsetti v. United Mine Workers,* 249 F.Supp. 970, 973 (W.D.Pa.1965), *aff'd,* 355 F.2d 658 (3rd Cir.1966); *Rose v. General Motors Corp., supra,* at 752.

Consideration of authority construing § 10(b) of the NLRA does not compel a different result. That section provides that the National Labor Relations Board shall issue no complaint "based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board ...." In a leading case interpreting this provision, the Supreme Court held that an otherwise lawful act within the six-month period is not made actionable, merely because same is predicated on a time-barred unlawful practice. *Machinists Local Lodge No. 1424 v. NLRB,* 362 U.S. 411, 417, 80 S.Ct. 822, 827, 4 L.Ed.2d 832 (1960). In language pertinent to the within matter, in discussing certain allegedly improperly ratified collective bargaining agreements, the Court added that:

> In any real sense, then, the complaints in this case are "based upon" the unlawful execution of the agreement, for its en-

---

7. Defendants have referred to said deposition, but apparently have not filed same (or excerpts thereof) with the Court. Defendants are requested to promptly do so, to properly complete the record under Fed.R.Civ.P. 56(c).

forcement, though continuing, is a continuing violation solely by reason of circumstances existing only at the date of execution. To justify reliance on those circumstances on the ground that the maintenance in effect of the agreement is a continuing violation is to support a lifting of the limitations bar by a characterization which becomes apt only when that bar has already been lifted. Put another way, if the § 10(b) proviso is to be given effect, the enforcement, as distinguished from the execution, of such an agreement as this constitutes a suable unfair labor practice only for six months following the making of the agreement.

*Id.* at 423, 80 S.Ct. at 830 (footnote omitted). So it is in this case. According to Plaintiffs, the improper collective bargaining agreements were executed in 1979; defendants began to enforce those agreements (at the latest) in January of 1981. As suggested above, this "enforcement" date should stand as the latest date upon which this action accrued.

Likewise, in interpreting § 10(b), the Sixth Circuit has held that refusals to hire an employee, inside the six month period, are not made actionable if an original unlawful discharge is time-barred. *NLRB v. McCready & Sons, Inc.,* 482 F.2d 872, 874 (6th Cir.1973). *Cf. NLRB v. Basic Wire Products, Inc.,* 516 F.2d 261 (6th Cir.1975) (company's refusal to collectively bargain with union was continuing violation, since company was under statutory duty to so bargain). A Fifth Circuit case cited by Plaintiffs, *NLRB v. Dollar General Drivers,* 228 F.2d 702 (5th Cir.1956), is not apposite. In that case, the collective bargaining agreement provided that the union was to settle disputes over the combining of seniority lists. The Court held that:

> if the contract provision giving the Union sole power to settle seniority disputes violated the [NLRA], or if the Union exercised that power discriminatorily, each time it did so constituted a separate and distinct act, whether or not the decision so to act was made outside the six-month period.

*Id.* at 705. The collective bargaining agreements herein contain no like provision. Here, the defendants "acted" against the Plaintiff employees, essentially as a whole, when it executed said agreements in 1979 and implemented same early in 1981. No "separate and distinct" acts by the Defendants have "continued" up till the present date. Thus, *Dollar General Drivers* does not control this action.

For all of the above-stated reasons, the Court finds that Defendants are not guilty of "continuing violations" of LMRDA § 101 and LMRA § 301, and that Plaintiffs' causes of action thereon accrued, at the latest, in January of 1981.

## B. APPLICABILITY OF BADON V. GENERAL MOTORS CORP. AND ITS PROGENY

█ The federal statutes upon which Plaintiffs are bringing suit set forth no statute of limitations. Therefore, in cases arising under § 301 of the LMRA, "the appropriate state statute of limitation" must be borrowed. (*United Parcel Service, Inc. v. Mitchell, supra,* 451 U.S. at 60, 101 S.Ct. at 1562; *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966)) and LMRDA § 101 actions (*Howard v. Aluminum Workers International Union,* 589 F.2d 771, 773 (4th Cir.1978)). Defendants vigorously argue that the most appropriate statute of limitation is found in Ohio Rev.Code Ann. § 2711.13, which provides that suit to vacate an arbitration award must be brought within three months. Relying on the Sixth Circuit's decision in *Badon v. General Motors Corp., supra,* Defendants contend that the grievance and arbitration procedures, found in the various collective bargaining agreements at issue herein, could have been utilized by Plaintiffs to press their concerns involving alleged loss of job recall rights. Once Plaintiffs did not so act, GMC's decisions "become final through the operation of the collectively bargained-for private system of dispute resolution," *Badon, supra,* 679 F.2d at 98, and the three month limitation period of Ohio Rev.Code Ann.

§ 2711.13 became applicable. Such a limitations period, Defendants conclude, would clearly time-bar Plaintiffs' federal actions in this case. In contrast, Plaintiffs argue and allege in their complaints, ¶¶ 49–52, that the aforementioned grievance and arbitration procedures were and are inapplicable to their types of concerns, and that it would have been futile to utilize same. They conclude that *Badon* and its progeny are inapplicable, and that other case law, applying a longer statute of limitations, should be applied. For the reasons set out below, the Court finds Plaintiffs' arguments to be well-taken.

A brief review of the relevant case law is appropriate at this point. In *Auto Workers v. Hoosier Cardinal, supra,* a union brought suit under LMRA § 301 against an employer for breach of a collective bargaining agreement. Finding that the characterization of such an action, for the purposes of borrowing a limitations period, "is ultimately a question of federal law," 383 U.S. at 705, 86 S.Ct. at 1113; the Supreme Court applied the state statute of limitations for breach of oral contracts. *Id.* at 707, 86 S.Ct. at 1114. The Court reserved ruling on the question of "[w]hether other § 301 suits different from the present one might call for the application of other rules on timeliness . . . ." *Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7. *United Parcel Service, Inc. v. Mitchell, supra,* involved a § 301 claim against an employer for breach of the collective bargaining agreement *and* a claim against the union for breach of its duty of fair representation. The union therein pursued an employee's grievance to a joint panel, as provided in the agreement, and the panel reached a "binding" decision denying the grievance. 451 U.S. at 58, 101 S.Ct. at 1561. Characterizing the employee's § 301 action as one to vacate an arbitration award, *id.* at 61–62, 101 S.Ct. at 1563–64, the Court borrowed the New York 90-day statute of limitation for vacating such awards. *Id.* at 62, 101 S.Ct. at 1563.

In *Badon,* the Sixth Circuit carried the *Mitchell* rationale one step further. Like *Mitchell* (and the present action), *Badon* involved a "hybrid" § 301 breach of collective bargaining agreement/breach of duty of fair representation claim. The company therein denied a certain pension claim made by employee Badon, and the Union failed to appeal the company's denial. Said denial became "final and binding on all parties pursuant to the terms of the national contract." 679 F.2d at 95. The Sixth Circuit found the *reasoning* of *Mitchell* to be controlling, even though Badon's claim was never heard by an impartial panel, or went to arbitration. *Id.* at 97. Emphasizing the importance of maintaining the integrity of the private dispute resolution process found in collective bargaining agreements, *id.* at 97–98, the Court applied *Mitchell* to Badon's § 301 action, reasoning that "[a]lthough [the] claim was never heard by an impartial panel because of the union's failure to appeal it, the dispute was resolved and became final according to the contractually established resolution process." *Id.* at 98. Finding that the Michigan statute of limitation for vacating arbitration awards did not, by its terms, apply to labor disputes, *id.* at 98–99, the *Badon* Court, "decid[ing] this federal question on the strength of our own reasoning," *id.* at 99, held "that the most appropriate statute of limitations under these circumstances" was § 10(b) of the NLRA. *Id.*

Following *Badon,* several courts within this Circuit have applied the Ohio statute of limitations, for vacating arbitration awards, to § 301 suits where a grievance process had been initiated, but not completed through to arbitration. *See, e.g., Rachubka v. Incom International,* 555 F.Supp. 552 (N.D.Ohio 1982) (Aldrich, J.); *Ward v. Alside, Inc.,* 550 F.Supp. 1074 (N.D.Ohio 1982) (Aldrich, J.); *Felts v. Diamond International Corp.,* Case No. C–1–81–836 (S.D.Ohio Oct. 14, 1982) (Rubin, J.); *Rose v. General Motors Corp., supra,* at 753–54. Other Courts, including this Court, have reached the same holding, in situations where a grievance concerning a dispute *could have been,* but was not timely submitted (or submitted at all) to the grievance procedure found in the collective bargaining agreement. *See, Lamore v. In-*

*land Division of General Motors Corp.,* 550 F.Supp. 1005 (S.D.Ohio 1982); *Baldridge v. Arkansas Best Freight System, Inc.,* 550 F.Supp. 1159 (S.D.Ohio 1982); *Mauget v. Kaiser Engineering, Inc.,* 546 F.Supp. 486 (S.D.Ohio 1982) (Spiegel, J.).

Defendants seek to apply the reasoning of *Badon* and its progeny to the within matter. They correctly point out that both the "local" and "national" collective bargaining agreements, ratified in 1976 and 1979, contain grievance and arbitration procedures which are "final and binding" on all parties. As indicated above, Plaintiffs concede that they did not utilize said procedures to protest their alleged injuries. Asserting that Plaintiffs *could have* grieved their disputes, now before this Court, through said procedures, Defendants argue that GMC's decisions thereon became, in the words of *Badon,* "final according to the contractually established resolution process." 679 F.2d at 98. They thus conclude that Ohio's three-month statute for vacating arbitration awards applies to this case, which would bar Plaintiffs' action (assuming, as this Court does, an accrual date of January of 1981).

With no citation of authority, and somewhat bare-bones reasoning, Plaintiffs argue (reiterating the allegations in the complaints) that said grievance procedures were "inherently inapplicable" to their types of complaints, and that it would have been "futile" to pursue such procedures, given the hostility of the unions and GMC. Since the "contractually established resolution process," *Badon, supra,* was inapplicable and would have been futile to pursue, Plaintiffs conclude that GMC's decisions regarding job-recalls never became "final" pursuant to same, and that it would be inappropriate to apply Ohio Rev.Code Ann. § 2711.13.

The Court agrees with Plaintiffs that the grievance procedures herein are "inherently inapplicable" to their complaints in this case."[8] The grievance procedures in the 1976 and 1979 "local" and "national" agreements are virtually identical. They provide that an "employee having a grievance in connection with his or her work" may first contact "the foreman and attempt to adjust the grievance," and then can follow other "steps," culminating in a "final and binding" decision by an impartial "umpire." The local agreements do not expressly define or limit what problems the grievance may cover; under the national agreements, the umpire may make a decision "in all claims of discrimination for Union activities or membership and in all cases of alleged violation of the terms of [various listed] Sections of this Agreement, and within local or national supplementary agreements on these same subjects."

It seems certain that Plaintiffs' complaints could not have been processed under this grievance procedure. Plaintiffs are not merely contesting some action in a

---

**8.** It is thus unnecessary to decide whether Plaintiffs' "futility" argument, in and of itself, would justify a decision to disclaim analogy to the Ohio statute of limitation for vacating arbitration awards. An employee bringing a § 301 suit must first have used, or attempted to use, the grievance procedure found in a collective bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). However, such an attempt is not even necessary if the employee can demonstrate that the effort would have been futile. *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 329–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969). The contours of what constitutes "futility" is not clear, although the hostility and/or collusion of the union and company officials administering the procedure appears to play a large part. *Id.* at 331, 89 S.Ct. at 552; *Marlowe v. Fisher Body,* 489 F.2d 1057, 1065

(6th Cir.1973). In some respects, a "futility" argument resembles a plaintiff's burden to show that a union breached its duty of fair representation. *Day v. UAW Local 36,* 466 F.2d 83, 96 (6th Cir.1972); *Baldridge, supra,* 550 F.Supp. at 1170. The Court has been unable to find any published authority which directly addresses the question raised in the first sentence of this footnote. *Cf. Baldridge, supra,* 550 F.Supp. at 1170 (alleged denial of access to grievance machinery is often "involved in every action predicated on a breach of the duty of fair representation;" Ohio Rev.Code Ann. § 2711.13 applied) *with King v. Corn Products,* 538 F.Supp. 569, 571 (N.D.Ill.1982) (no analogy to vacation of arbitration awards when union "did nothing" with employee's grievance). It should be noted that the *King* decision appears to conflict with *Badon* and its progeny.

GMC plant concerning "his or her work," such as, *e.g.*, working conditions or disciplinary action. Instead, they are attacking the *entirety* of the collective bargaining agreements (or, at least, the recall provisions thereof) as having been unlawfully negotiated, ratified, and implemented. To require the plaintiff employees to file a grievance stating such particulars would be incongruous and illogical.

In plants with large numbers of employees, a union and management will typically enter into a collective bargaining agreement "to erect a system of industrial self-government." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). Grievance and arbitration procedures are established therein to provide a dispute resolution process, as a quid pro quo for the union agreeing to forego a strike over every dispute. *Id.* at 581, 80 S.Ct. at 1352; *Badon, supra,* 679 F.2d at 97. These procedures are typically meant to enforce or to interpret formal or informal rules created by the company and union in the collective bargaining process, and the grievance will often be processed, after the initial stage, by the union. Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Calif.L.Rev. 663, 742–55 (1973). This system provides

> for the adjudication, at the instance of an aggrieved employee, of complaints that management, in exercising its power to direct the work force, has not complied with the rules jointly agreed to.

*Id.* at 742. A grievance procedure thus does not contemplate a wholesale attack *on the validity of the rules themselves.* Changing the rules, as opposed to interpreting same, is a function of the collective bargaining process, not the grievance/arbitration procedure.

Based on these principles, the grievance procedures found in Defendants' agreements were simply not amenable to Plaintiffs' disputes with GMC. Relevant case law, while sparse, supports this conclusion. In *Schneider v. Electric Auto-Lite Co.*, 456 F.2d 366 (6th Cir.1972), former employees of a shutdown plant brought suit under LMRA § 301, alleging that the company had violated a letter agreement with the union concerning job transfer rights, *id.* at 368–69. The grievance procedure in the collective bargaining agreement governed disputes "between the foreman and any employee." *Id.* at 370. Agreeing with the district judge, the Court held

> that the agreement's grievance procedure is inapplicable to the type of dispute involved in this suit, and therefore that such procedures need not have been exhausted as a prerequisite to this suit.

*Id.* (footnote omitted). For other analogous examples, *see, Carpenters & Joiners v. Hensel Phelps Construction Co.*, 376 F.2d 731, 736–37 (10th Cir.1967) ("rudimentary" grievance procedure not applicable to disputes over which contract parties were properly operating under), *cert. denied,* 389 U.S. 952, 88 S.Ct. 333, 19 L.Ed.2d 360 (1968); *Mauget v. Kaiser Engineers, Inc., supra,* 546 F.Supp. at 490–91 (employee-union dispute after discharge not subject to grievance procedure). *See generally,* Simpson & Berwick, *Exhaustion of Grievance Procedures and the Individual Employee,* 51 Tex.L.Rev. 1179, 1201–02 (1973).[9]

For all of these reasons, this Court rejects Defendants' position, and finds the above summarized reasoning of *Badon* not

---

9. Other, more obvious, examples excusing exhaustion would be where the collective bargaining agreement contains no grievance procedure at all, *Smith v. Evening News Assoc.*, 371 U.S. 195, 196 n. 1, 83 S.Ct. 267, 268 n. 1, 9 L.Ed.2d 246 (1962), or where the procedure does *not* culminate in "final and binding" arbitration. Feller, *supra,* at 841–47; Mason, *Collective Bargaining Agreements Without Arbitration Clauses: Does the Finality Doctrine Bar Section 301 Suits?,* 7 U.Day L.Rev. 387 (1982).

The Court does not find a case advanced by Defendants, *McCoy v. Truck Drivers Local Union No. 100,* 526 F.Supp. 1256 (S.D.Ohio 1981) (Spiegel, J.), to be particularly on point. There, the Court applied the Ohio statute of limitation for vacating arbitration awards to a § 301 action attacking a "working agreement" between a company and union which dovetailed certain seniority lists. But unlike the within matter, the agreement had been reviewed and approved by an arbitration panel. *Id.* at 1257.

**1198**

to apply to the facts of this case. Plaintiffs were not required to exhaust a grievance procedure which did not apply to their dispute with the company. Thus, GMC's decisions on recall rights did *not* become final under the contractually established resolution process, and Ohio Rev.Code Ann. § 2711.13 is *not* an appropriate statute of limitation. The Court next turns to the question of what statute *does* provide an appropriate limitation period.[10]

## C. APPLYING NLRA § 10(b) AS A LIMITATION PERIOD

■ Having argued, successfully, that the Ohio three-month statute for vacating arbitration awards is not an appropriate limitations period, Plaintiffs vigorously argue that the applicable period is found in the six-year Ohio statute for a "liability created by a statute," Ohio Rev.Code Ann. § 2305.07. Such an application, they contend, is compelled by the Sixth Circuit's decision in *Newton v. Electrical Workers Local 801*, 684 F.2d 401 (6th Cir.1982). This Court does not agree.

*Newton* involved a union (coincidentally, the Defendant local herein) processing the grievance of an employee discharged by GMC. At the "umpire" level of grievance appeal, the plaintiff-employee alleged that the union and company agreed, through a "contract" executed on a grievance procedure form, to reinstate him. However, he further alleged, those parties later repudiated the "contract," and plaintiff filed suit before this Court to enforce same. In a decision which predated *Mitchell*, this Court applied Ohio Rev.Code Ann. § 2305.07, rather than the 15-year statute of limitations for actions based on written contracts, Ohio Rev.Code Ann. § 2305.06. 507 F.Supp. 439 (S.D.Ohio 1980). This Court applied the former statute since the union's

duty of fair representation, which it allegedly breached, was derived from the union's statutory right, under the NLRA, as an exclusive bargaining agent. *Id.* at 444. The Sixth Circuit, in a post-*Mitchell* decision, affirmed for basically the same reasons. 684 F.2d 401, 403 (6th Cir.1982). In passing, the Court observed that *Badon* had applied NLRA § 10(b) as a limitations period, *id.* at 403 n. 2, and that its decision was consistent with the *Mitchell* decision's emphasis on the need for rapidly disposing of labor disputes. *Id.* at 404.

*Newton's* holding does not control the within matter. This Court has previously commented on the *apparent* incongruity between *Newton* and *Badon*. Like *Badon*, the facts in *Newton* appeared to present a vehicle for applying the limitation period for vacating arbitration awards, since both cases involved decisions which had become final under the applicable grievance procedures. *See, Lamore v. Inland Division, supra*, 550 F.Supp. at 1011; *see also, Lawson v. Truck Drivers Local 100*, 698 F.2d 250, 259 n. 4 (6th Cir.1983) (Keith, J., concurring in part and dissenting in part). However, the Sixth Circuit recently explained that no such inconsistency existed. The three-month statute for vacating arbitration awards had not been "brought to the [*Newton*] court's attention;" the Court was merely applying, as it should have, "the shortest statute of limitations available to it." *D'Andrea v. American Postal Workers Union*, 700 F.2d 335, 338 (6th Cir.1983) (per curiam).[11] Unlike *Newton*, the applicability of Ohio Rev.Code Ann. §§ 2305.07, 2711.13, NLRA § 10(b), and other limitation periods have been raised and argued before this Court. Therefore, *Newton's* strict holding does not confine this Court.

---

**10.** Needless to say, if this Court is incorrect in its decision *not* to apply Ohio Rev.Code Ann. § 2711.13, then Plaintiffs' suit would clearly be barred as having been brought over three months after the accrual date of January of 1981. Such a holding, of course, would be consistent with the Court's ultimate conclusion that the suit is barred by NLRA § 10(b).

**11.** This rationale for distinguishing *Newton* from *Badon* had been previously made by this Court. *See, Rose v. General Motors Corp., supra*, at 754 n. 6 (relying on *Mauget v. Kaiser Engineers, Inc., supra*; 546 F.Supp. at 488, 491).

Having determined that *Newton* does not apply, the Court must select the most applicable statute of limitation. This inquiry will be aided by considering the purposes of statutes of limitation in general. Such statutes "have long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). These limitations periods serve the interests of insuring that the fact-finding process at trial is not undermined by stale evidence, and that settled expectations of parties are not upset long after patterns of conduct have become institutionalized. *Id.*; Special Project, *Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations,* 65 Cornell L.Rev. 1011, 1016–18 (1980).

These concerns apply with force to labor disputes in general, and to the within matter in particular. The Supreme Court, *e.g., Hoosier Cardinal, supra,* 383 U.S. at 707, 86 S.Ct. at 1114; *Mitchell, supra,* 451 U.S. at 64, 101 S.Ct. at 1564, and this Circuit, *e.g., D'Andrea, supra,* 700 F.2d at 338; *Newton, supra,* 684 F.2d at 404, have emphasized the need for "the relatively rapid disposition of labor disputes." As the *Badon* Court explained, expeditious resolution of labor controversies in court promotes the finality and integrity of the collectively bargained-for grievance procedure. 679 F.2d at 97–98. *See also,* Feller, *supra,* at 751–52. Yet as Defendants point out, these concerns are heightened in this case, even though the Court has determined that Plaintiffs need not have resorted to the various grievance procedures. As previously discussed, Plaintiffs are not merely complaining of some aspect of work at a GMC plant; they are attacking the legality of entire collective bargaining agreements (or relevant provisions thereof). The Defendants had been operating under "settled expectations" for almost three years under these agreements when Plaintiffs filed suit in this Court. Literally hundreds of employees had been recalled and placed in the newly opened plants in Moraine by the time suit was filed. By their lawsuit, Plaintiffs

seek to disengage these expectations; the relief they seek would, *inter alia,* presumably replace hundreds of current GMC employees with Plaintiffs, and necessitate retraining of the new employees by GMC. In short, the same reasons which compel the conclusion that the grievance procedures did not apply *also* should have compelled laid off workers to quickly bring action in court once their action accrued. Surely, as Defendants put it, entire collective bargaining agreements, and the jobs of numerous employees working thereunder, should not be subject to collateral attack years after the agreements are consummated.

These concerns support the imposition of a relatively short statute of limitations to this case. The Court has determined that the three-month period of Ohio Rev.Code Ann. § 2711.13 does not, by its terms, apply. On the other hand, applying other, lengthier limitations periods found in the Ohio Revised Code (*e.g.,* § 2305.07, six years for liability created by statute; § 2305.09, four years for most torts) would run counter to the necessity of a rapid resolution of *this type* of LMRA § 301 action. This case cannot be, and need not be, strictly analogized to the statute establishing a six year statute of limitations for liability created by statute. To be sure, both the unions' and GMC's liability arise under a statute (the NLRA and LMRA respectively). Plaintiffs' claims herein, an "amalgam" of LMRA § 301 and the NLRA, are "inextricably interdependent," since the employee-plaintiffs must prove both a breach of contract *and* a breach of the duty of fair representation. *Mitchell, supra,* 451 U.S. at 66–67, 101 S.Ct. at 1565–1566 (Steward, J., concurring). However, neither the instant case, nor *all* "hybrid" § 301 actions, need be forced into the straightjacket of § 2305.07. The Sixth Circuit conceded as much in *Newton, supra* (when it observed that NLRA § 10(b) would also bar the suit, 684 F.2d at 403 n. 2), in *Lawson, supra* (which applied Ohio Rev. Code Ann. § 2711.13 (the three month statute for seeking to vacate arbitration awards), over the protestations of Judge

Keith in dissent, 698 F.2d at 259 & n. 4, who argued that *Newton* and § 2305.07 should apply to claims against a union), and in *D'Andrea* (which also applied § 2711.13, distinguishing *Newton,* as noted above). To automatically apply § 2305.07 to this action, as Plaintiffs wish, would render the foregoing decisions meaningless. Clearly, in light of *Mitchell's* admonition that labor disputes should be quickly resolved, § 2305.07 need not be applied to "hybrid" § 301 cases when other, shorter limitations periods are presented to the Court. This holding carries special force herein, given the necessity of rapid disposition of litigation which is tantamount to a wholesale attack on collective bargaining agreements. Most collective bargaining agreements are in force for a limited time period, R. Gorman, Labor Law 540 (1976), such as three years for the agreements at issue herein. To permit a limitation period to control, which is *longer than the agreement itself,* would be inappropriate in a case which attacks the agreement itself, and would contravene the federal policy of expeditious resolution of labor disputes. To adopt Plaintiffs' theory could permit an attack upon an agreement long after the agreement had expired or been superseded, a result surely inconsistent with federal labor policy.

Likewise, this case cannot be *strictly* analogized to the latter statute, establishing a four-year limitations period for most torts, while a claim that a union has breached its duty of fair representation may, in a typical case, resemble a tort, *Newton, supra,* 684 F.2d at 403, *this* case does not resemble a case brought by one employee seeking relief only for himself. The contours of this lawsuit—brought by hundreds of employees seeking, *inter alia,* broad injunctive relief—brings it out of the framework of a typical lawsuit in a state court (to which the above limitations periods might apply), and brings the policies of federal labor law strongly into play. In the words of *Hoosier Cardinal,* this is § 301 suit, "different" from the typical suit brought by one employee, which "call[s] for the application of other rules on timeli-

ness," 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7, than those found in the Ohio Revised Code.

While most of the case law refers to borrowing of applicable *state* statutes of limitation, this Court is not confined to only examining state laws. If no state law is found to be analogous, the Court may look to *federal* law, as well. *Pitts v. Frito-Lay, Inc.,* 700 F.2d 330, 332 (6th Cir.1983); *Badon, supra,* 679 F.2d at 99–100; Special Project, *supra,* at 1013–14. *Badon* presents a situation much like the instant one. There, as already summarized, the Court could not apply a state limitation period. The Court then applied the six-month period found in NLRA § 10(b) to the LMRA § 301 action. This Court also finds NLRA § 10(b) (providing that the National Labor Relations Board shall not issue unfair labor practice charges on complaints more than six months old) to be appropriate, and will apply it to this lawsuit.

*Badon* found the concurring opinion of Justice Stewart in *Mitchell* to be instructive. Justice Stewart first pointed out that plaintiff Mitchell was bringing a "hybrid" § 301 action, charging the employer with breach of the collective bargaining agreement, and the union with breach of its duty of fair representation. 451 U.S. at 66, 101 S.Ct. at 1565. The former claim is based on § 301, but the latter claim is derived from the exclusive representation status of unions under the NLRA. *Id. See also, Badon, supra,* 679 F.2d at 97 & n. 2. Since a plaintiff must first prevail against the union before litigating the claim against the company, 451 U.S. at 67, 101 S.Ct. at 1566, Justice Stewart suggested that the limitations period found in the NLRA § 10(b) be applied. *Id.* at 69–70, 101 S.Ct. at 1567, 1568. These principles were adopted by the *Badon* court, once it decided that the Michigan limitations period did not apply. 679 F.2d at 99–100.

As the Supreme Court summarized in *Machinists Local Lodge No. 1424, supra,* Congress meant § 10(b)

to bar litigation over past events "after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." H.R.Rep. No. 245, 80th Cong., 1st Sess. p. 40, and of course to stabilize existing bargaining relationships.

362 U.S. at 419, 80 S.Ct. at 828 (footnote omitted). These purposes are no less applicable to a "hybrid" LMRA § 301 actions such as the within matter. A six-month period gives potential plaintiffs ample opportunity to assess their situation and file suit, while serving the need to prevent "collateral attack" on decisions made under a collective bargaining agreement (or, as here, on the agreement itself) years after the cause of action accrued. Based on these principles, several courts, outside of this Circuit, have applied NLRA § 10(b) to "hybrid" LMRA § 301 actions, rather than applying a variety of state limitations periods. *See, e.g., Hall v. Printing & Graphic Arts Union,* 696 F.2d 494, 498–99 (7th Cir. 1982); *Lewis v. Harbison-Walker Refractories,* 542 F.Supp. 1381 (N.D.Ind.1982); *Benson v. General Motors Corp.,* 539 F.Supp. 55 (N.D.Ala.1981); *Collins v. Car Carriers, Inc.,* 536 F.Supp. 776 (N.D.Ill. 1982); *Kaftanzis v. Mechanics Union Local 701,* 531 F.Supp. 566 (N.D.Ill.1982). Moreover, in *Badon,* this Circuit approved, as noted above, the use of NLRA § 10(b) when there was no applicable state limitation period. *See also, Feller, supra,* at 825 (advocating use of § 10(b) in such actions).

Accordingly, based on the aforementioned authority and on the particular fac- tual circumstances unique to this § 301 lawsuit, this Court finds NLRA § 10(b) to be the appropriate limitations period for Plaintiffs' action against the Defendant unions. In this Circuit, the same limitation period applies to both the unfair representation *and* breach of contract claims. *Pitts v. Frito-Lay, Inc., supra,* 700 F.2d at 332 n. 2; *Lawson v. Truck Drivers Local Union 100, supra,* 698 F.2d at 253; *Newton v. Electrical Workers Local 801, supra,* 684 F.2d at 404. Therefore, the Court will apply § 10(b) to *all* three Defendants. Given that Plaintiffs' action accrued, at the latest, in January of 1981, Plaintiffs' claims under LMRA § 301 are time-barred for having been brought more than six months after the accrual date. The reasoning outlined in this section also applies to Plaintiffs' claim under LMRA § 101. *See,* footnote 5, *supra.* Accordingly, the Court applies NLRA § 10(b) to that claim, and finds it time- barred, as well.[12]

## IV. FURTHER PROCEDURES

Having determined that application of NLRA § 10(b) bars Plaintiffs' federal claims, the Court will grant Defendants' motions for summary judgment on those claims. However, the Court finds *dismissal* of the remaining state law tort claims to be appropriate. This Court retains the discretion to decline the exercise of its power of pendent jurisdiction, when all federal claims have been dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *J.P. v. DeSanti,* 653 F.2d 1080, 1086 (6th Cir.1981). In such

---

**12.** Plaintiffs have not advanced the argument that any of the limitation periods discussed in this opinion should not be given retroactive affect. Since none of the parties has argued that the "normal rule" of retroactivity, *Lawson, supra,* 698 F.2d at 254, should *not* apply, this Court finds it unnecessary to address same. *Cf. Lamore, supra,* 550 F.Supp. at 1013 n. 9. In any event, the Court believes that no retroactivity problems are present. The Sixth Circuit in *Lawson, supra,* described *Mitchell, supra,* as an attempt to clarify "a legally chaotic situation," that it was not a "clean break" with past precedent, and that the normal rule of applying decisions to pending cases should hold. 698 F.2d at

254. Given the "legally chaotic" situation in the Sixth Circuit case law, *Lamore, supra,* 550 F.Supp. at 1012–13, and the fact that no published opinions appear to have addressed which *Ohio* limitations period should apply in a hybrid § 301 action, *id.* at 1012 & n. 8, this Court does *not* find that applying NLRA § 10(b) presents a "clean break" with the past, which might justify non-retroactive application of the Court's decision. *Cf. Pitts v. Frito-Lay, Inc., supra,* 700 F.2d at 333–4 & n. 3 (refusing to apply *Badon* retroactively, insofar as decision applied NLRA § 10(b); *Badon* presented "clean break with past precedent" applying Michigan limitations period for torts).

circumstances, "the state claim may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40. Here, the remaining state law tort claims would appear to be governed by Ohio Rev. Code Ann. § 2305.09(B), which provides a four-year statute of limitations for most torts. While the accrual time of these torts is not clear, this Court believes that an Ohio court would find that same accrued in January of 1981. *Cf. Rose v. General Motors Corp., supra,* at 751–52 (discussing Ohio accrual law). Thus, Plaintiffs' state law tort claims would not necessarily be time-barred if dismissed, and it would not be an abuse of discretion for this Court to dismiss same. *See, Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980) (per curiam) (whether state law claims will be time-barred, if dismissed, is "determinative factor" district court should consider in maintaining jurisdiction over pendent state claims once federal claims are resolved).

At this time, however, the Court will not enter judgment for Defendants on Plaintiffs' federal claims. In two cases pending this Term, *Flowers v. Steelworkers Local 2602,* 671 F.2d 87 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982), and *DelCostello v. Teamsters,* 524 F.Supp. 721 (D.Md.1981), *aff'd without published opinion,* 679 F.2d 879 (4th Cir. 1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982), the Supreme Court will decide issues arguably relevant to the within matter. According to the questions on which certiorari was granted, *see,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1982), the Supreme Court will decide

1.  if the *Mitchell* decision should be applied retroactively;

2.  if the same statute of limitation should apply to a union and an employer in a "hybrid" § 301 suit; and

3.  if NLRA § 10(b) should apply to a claim that a union has breached its duty of fair representation.

The Supreme Court's answers to the latter two questions may prove relevant to this Court's opinion herein.

Should these decisions invalidate, in whole or in part, the reasoning of this decision, the Court will vacate same and conduct further appropriate proceedings. However, should the Supreme Court rulings not affect this decision, the Court will direct that judgment for Defendants be entered on the federal claims.

The Plaintiffs' state law claims are dismissed, without prejudice.

Trial on the merits of the captioned cause, set for the week of April 25, 1983, is cancelled in accordance with this opinion.