Albert A. MOON, Plaintiff,

v.

AERONCA, INC., et al., Defendants.

No. C-3-81-329.

United States District Court,
S. D. Ohio, W. D.

June 23, 1982.

Roger B. Turrell, Dayton, Ohio, for plaintiff.

Lawrence J. Barty, Cincinnati, Ohio, for defendant Aeronca, Inc.

Ray E. Schmidt, Dayton, Ohio, for defendant Local Union 2535.

DECISION AND ENTRY ON PENDING MOTIONS; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SUSTAINED; TERMINATION ENTRY

RICE, District Judge.

Plaintiff Albert A. Moon has brought this suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and seeks declaratory, injunctive, and

monetary relief from the Defendants, Aeronca, Inc. (Aeronca), and Local Lodge 2535 of the International Association of Machinists and Aerospace Workers (the "union"). Three motions are currently pending before this Court, to wit:

1) Plaintiff's motion for summary judgment (doc. # 13);

2) the Union's motion for summary judgment (doc. # 15); and

3) Aeronca's motion for summary judgment (doc. # 16).

Based on the arguments advanced by counsel in written memoranda, and upon an examination of the materials submitted both in support of and in opposition to the above motions, the Court overrules Plaintiff's motion for summary judgment, and sustains the motions for summary judgment filed by the Defendants.

## I. PROCEDURAL BACKGROUND

Most, though not all of the facts in this case are undisputed, and can be gleaned through a review of pleadings, memoranda, and other material in the record.

Defendant Aeronca owns a manufacturing plant in Middletown, Ohio. The Union represented, at all times relevant to this case, the production and maintenance employees at the plant, pursuant to a collective bargaining agreement which ran from July 19, 1976, to July 18, 1979. (doc. # 15, ex. 4). Said agreement provided, *inter alia*, for a system of seniority for the employees, *id.*, Art. 12, that employees "shall cease to have seniority of any kind" upon reaching age sixty-five (65), *id.*, Art. 13.1(B), and that persons removed from the seniority list "shall be deemed to have quit . . . ." Art. 13.2.

Plaintiff, born on August 10, 1911 (amended complaint, ¶ 3), sought employment at Aeronca early in 1978. He was interviewed by Elane Berumen who, at the time, was an employment supervisor at Aeronca. Ms. Berumen told him that he could not be hired, since he was over the age of 65 (Plaintiff being 66 at the time). Deposition of Elane Berumen, doc. # 14, pp. 7–9. However, Ms. Berumen heard shortly thereafter that the mandatory retirement age had been raised,[1] and after conferring with her superior, Frank Sciutto, she arranged to have Plaintiff hired, on May 15, 1978. *Id.*

Although there is no dispute that Plaintiff performed his work as a welder in a satisfactory manner, he was nevertheless terminated by Aeronca on June 16, 1978. Lewis Slatton, president of the Union, spoke to Mr. Sciutto, telling him that if Aeronca were going to hire workers over the age of 65, like Mr. Moon, the Union would not acquiesce in Aeronca retiring current employees when they reached that age. Deposition of Lewis Slatton, doc. # 15, ex. 3, pp. 9–13. Plaintiff was terminated shortly after this conversation. The parties dispute whether the termination was a result of Aeronca "caving in" to Union "pressure", and to what extent (if any) the terms of the collective bargaining agreement were a factor in the decision.

Plaintiff thereafter, from 1978 through September of 1980, continued to seek employment at Aeronca. He claims to have called the Aeronca employment office a number of times during that period but, save for the first call, did not identify himself nor mention his age. Deposition of Albert Moon, doc. # 15, ex. 2, pp. 24–29. Plaintiff also claims to have called the local offices of the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC) in the summer of 1978, to complain of age discrimination, but said he was given the "run-around". *Id.*, pp. 40–41. Plaintiff filed a charge of discrimination with the EEOC on March 19, 1981 (amended complaint, ¶ 7), and filed his ADEA suit in this Court on June 18, 1981.

The original complaint properly invoked the jurisdiction of this Court, pursuant to 29 U.S.C. § 626(c), and alleged that Plaintiff

1. Although she does not so state, Ms. Berumen was apparently referring to the amendments to the ADEA, passed in April of 1978, which raised the age, under which employees were protected from discrimination, from 65 to 70.

*See* text *infra.* As will be explained below, Aeronca contends that Ms. Berumen erroneously concluded that the 1978 amendments applied to Plaintiff. Doc. # 16, p. 8 n.2.

was discharged, and not again hired by Aeronca, because the collective bargaining agreement prohibited employment. after age 65. The amended complaint, filed by leave of this Court, made virtually identical allegations, but simply stated that Plaintiff was discharged, and not re-employed, due to his age, and made no mention of the collective bargaining agreement.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ARE SUSTAINED

Under Fed.R.Civ.P. 56, Defendants' motions for summary judgment can only be sustained when the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exist no genuine issues of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982); *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). With these standards in mind, the Court now considers the reasons advanced in support of the motions for summary judgment filed by the Defendants. Since the reasons advanced by each Defendant are virtually identical, said motions will, for convenience, be considered together.

## A. TIMELINESS OF FILING DISCRIMINATION CHARGE WITH THE EEOC

The ADEA prohibits any employer from refusing to hire, or discharging, any individual because of his age. 29 U.S.C. § 623(a). Age discrimination by a labor organization, such as the Union herein, is also prohibited. § 623(c). On April 6, 1978 (before most of the actions relevant to this case), the prohibitions in the ADEA became "limited to individuals who are at least 40 years of age but less than 70 years of age." § 631(a).

Plaintiffs under the ADEA must follow certain time constraints, as follows:

No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

Plaintiff herein concedes that he did not file a charge with the EEOC[2] until March 21, 1981. He also concedes that the EEOC filing was untimely, whether measured by the 180-day or the 300-day period set forth in § 626(d),[3] for the allegedly discriminatory discharge and refusal to rehire in 1978. At best, Plaintiff's EEOC filing was only timely for some or all of the calls he allegedly made to Aeronca in 1980.

---

2. The ADEA, as noted in the text, refers to filing a charge with the Secretary of Labor. In 1978, the duties of the Secretary, with respect to the enforcement of the ADEA, were transferred to the EEOC. *See* 1978 Reorg.Plan No. 1, 43 Fed.Reg. 19807, 92 Stat. 3781, *reprinted in* 5 U.S.C. Appendix II, at 159–165 (West Supp. 1982). Plaintiff thus properly filed with the EEOC.

3. Section 626(d) states that notice must be filed within 180 days after the allegedly unlawful practice occurred, § 626(d)(1), or within 300 days after the occurrence, § 626(d)(2), if § 633(b) applies. The latter section refers to a state "which has a law prohibiting discrimina-

tion in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice ...." Since, under § 633(b), Plaintiffs must commence proceedings under state law, such states are commonly referred to as "deferral states."

The parties herein are not clear as to which time period applies in this case, i.e., whether or not Ohio is a deferral state. This Court shares in that uncertainty. The Sixth Circuit has held that Ohio is *not* a deferral state, since no agency is empowered to enforce Ohio law, O.R.C. § 4101.17, which prohibits age discrimination in employment. *Eklund v. Lubrizol Corp.*, 529

Plaintiff also points out, however, that the Sixth Circuit has held that the filing requirements in § 626(d) of the ADEA are subject to equitable tolling. *Wright v. State of Tennessee*, 628 F.2d 949 (6th Cir. 1980) (en banc). Equitable factors are present in the case herein, Plaintiff contends, so as to excuse the failure to timely file with the EEOC (with respect to the events in 1978 and 1979).

This Court agrees that consideration of equitable factors is appropriate herein. However, Plaintiff's request that this Court toll the requirements of the ADEA, for said reasons, is not well taken. In *Wright*, the Court suggested that a review of the factors taken into account in *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643 (D.N.H.1977), would be appropriate. 628 F.2d at 953. The *Abbott* Court found that five factors were applicable:

1. lack of actual notice of the filing requirements;

2. lack of constructive knowledge;

3. diligence in pursuing one's rights;

4. absence of prejudice to the defendant; and

5. plaintiff's reasonableness in remaining ignorant of the notice requirement.

439 F.Supp. at 646.

 Applying these factors to the instant case reveals that equitable tolling is

not appropriate. With regard to the first factor, Plaintiff admitted in his deposition, with laudable candor, that he was aware of the ADEA and the timely procedural requirements of the same. Deposition at pp. 20, 42–43. He also admits that he saw the ADEA poster, required to be displayed on an employer's premises by statute, 29 U.S.C. § 627, and regulation, 29 C.F.R. § 1627.10 (1981), which describes in detail employment practices prohibited by the ADEA, and the necessity for promptly filing written charges with the relevant enforcement agency.[4] Thus, Plaintiff did have notice of the ADEA requirements, and the second and fifth factors, concerning constructive notice and ignorance of notice, need not be addressed.

Nor do the facts indicate that Plaintiff pursued his rights with diligence. As previously noted, Plaintiff admits that he made only a few phone calls to Aeronca over nearly a three-year period (before filing with the EEOC, and filing suit in this Court). Deposition at pp. 24–29. Plaintiff also alleges that he called the local EEOC and OCRC offices, but got the "run-around" from them. The personnel at those offices, he says, never wrote or called him back, as they said they would. *Id.* at 40–41. However, merely speaking (or attempting to speak) with officials at those offices does not constitute notice of a desire to file suit, or justify tolling of time periods under the

---

F.2d 247 (6th Cir. 1976). A short while after the *Eklund* decision, however, the Ohio Supreme Court held that O.R.C. § 4101.17 could be enforced, by implication, by the Ohio Department of Industrial Relations. *Fawcett v. G. C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976). In addition, the OCRC now also prohibits age discrimination in employment. O.R.C. § 4112.02(A). Whatever may be the significance of these post-*Eklund* developments, recent federal court decisions in Ohio, dealing with the ADEA, have assumed, without discussion, that the 180-day period still applies. *See Volk v. Multi-Media, Inc.*, 516 F.Supp. 157 (S.D.Ohio 1981); *Anness v. Steelworkers*, 26 FEP Cases 1341 (N.D.Ohio 1981).

To compound the uncertainty, the Union herein argues that even if Ohio is regarded as a deferral state, Plaintiff did not properly follow the procedure mandated for such states by the ADEA. Doc. # 15, pp. 5–6. *Cf. Oscar Mayer*

*& Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (discussing procedures to be followed in deferral states).

This Court finds it unnecessary to resolve this uncertainty since, as will be discussed below, even assuming Ohio is a deferral state and the 300-day period of § 626(d)(2) applies, summary judgment in favor of the defendants is still appropriate.

4. A copy of said poster, or a complete recitation of the contents of the same, is not in the record. However, Plaintiff has not disputed Defendant's contention that the poster is a standardized form, or that it displays the information related in the text. A copy of the poster can be found reprinted in 1 Empl.Prac.Dec. (CCH) ¶ 1863, and 8 FEP Manual (BNA) 441:235.

ADEA. *Woodard v. Western Union Telegraph Co.*, 650 F.2d 592 (5th Cir. 1981); *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1312 (5th Cir. 1976); *Needham v. Beecham, Inc.*, 515 F.Supp. 460 (D.Me.1981). This conclusion is lent particular force herein, in that Plaintiff does not allege that officials at those offices misled him as to the ADEA filing requirements. Thus, it is fair to say that Plaintiff did not pursue his rights under the ADEA with particular diligence.

Finally, Defendants assert that they have been prejudiced by Plaintiff's nearly three-year delay in filing, in that potential witnesses have left employment at Aeronca, evidence has gone stale, and Aeronca could not have been "alert" to the "[t]housands of employment inquiries" received during that period. Doc. # 19, p. 6. While these contentions are set forth by way of memoranda, not through an affidavit or in another verified manner, they are inferentially supported, at least in part, by the affidavit of David B. Rathke. Doc. # 16, ex. A., ¶ 3 (referring to "several hundred" applications and inquiries for employment during three year period). In any event, this Court would be inclined, in weighing the five *Abbott* factors together, not to invoke equitable tolling in the within case, for reason that the remaining factors outweigh any lack of prejudice to the Defendants.

■ Accordingly, having considered the factors applicable to equitable tolling in this case, this Court finds that same is not applicable, and that the 1981 filing with the EEOC is not timely for the discriminatory acts alleged in the complaint, save for the

5. Plaintiff argues that *Wright* mandates that this Court should conduct an evidentiary hearing as to the applicability of equitable tolling. Doc. # 17, pp. 2, 4. In *Wright*, the Court held that, on remand, the district court should conduct such a hearing, since the plaintiff "had no opportunity to *develop* his claims for equitable relief . . . ." 628 F.2d at 953 (emphasis added). The lower court in *Wright* had rejected the claim for equitable tolling as a matter of law. 23 FEP Cases 712, 713 (W.D.Tenn.1977), aff'd *per curiam*, 613 F.2d 647 (6th Cir.), *rev'd en banc*, 628 F.2d 949 (6th Cir. 1980). It is not clear from the opinions in *Wright* to what extent, if any, there was evidence in the record concerning equitable tolling.

calls alleged to have been made in 1980.[5] The relevance of those calls will be considered shortly.

## B. APPLICABILITY OF ADEA TO THE COLLECTIVE BARGAINING AGREEMENT

As a second reason in support of their motions, Defendants argue that even if Plaintiff had met the ADEA filing requirements, with respect to the discharge and other events in 1978, the collective bargaining agreement in effect at the time in question is expressly exempted, by statute, from the prohibitions found in the 1978 amendments to the ADEA, which raised coverage under the Act to persons under 70 years of age.

The ADEA, as amended in 1978, exempts the operation of "bona fide seniority systems," as follows:

It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual;

In contrast, the parties herein have fully addressed the applicability of equitable tolling, relying on their memoranda and other materials in the record, especially Plaintiff's deposition. Plaintiff asserts "that there is a factual question" concerning the appropriateness of equitable tolling. Doc. # 17, p. 4. However, there appear to be *no* contested facts concerning this issue, and Plaintiff does not identify any additional factual matters which might come out at a hearing. Rather, the *significance* of those facts is at issue. In these circumstances, an evidentiary hearing is unnecessary, and this Court does not interpret *Wright* as *requiring* such a hearing whenever the issue of equitable tolling is raised.

29 U.S.C. § 623(f)(2). In other words, a seniority system, such as that found in the collective bargaining agreement between the Defendants herein, cannot automatically retire an employee because he reaches an age between 40 and 70.

However, the 1978 amendments contained an important proviso, as follows:

The amendment [to § 632(f)(2)] shall take effect on the date of enactment of this Act [April 6, 1978], except that, in the case of employees covered by a collective bargaining agreement which is in effect on September 1, 1977 ... and would otherwise be prohibited by the [raising of the ADEA's upper limit], the amendment ... shall take effect upon the termination of such agreement or January 1, 1980, whichever occurs first.

§ 2(b), Pub.L.95–256, 92 Stat. 189.

The parties do not dispute that the collective bargaining agreement in effect, from 1976 through 1979, (doc. # 15, ex. 4), would fall under said proviso, and thus be exempted (at least for those years) from the operation of the 1978 amendments to the ADEA. Said amendments, as previously noted, raised the protected age from 65 to 70. Plaintiff, during the time in question, was over the age of 65. Hence, defendants conclude that the proviso exempts them from any liability to plaintiff.

Plaintiff disputes this conclusion, for two reasons. First, he argues that, as a probationary employee who never joined the Union, he simply was not covered by the collective bargaining agreement, and the above proviso should, accordingly, not apply. Second, he argues that, whatever may be his status under the agreement, the decision to discharge him was made wholly without regard for the terms of the agreement.

■ For the following reasons, this Court does not find Plaintiff's rationale to be persuasive, and finds that no genuine issues of material fact are raised by the same. Under the first reason, the parties focus on the language of the collective bargaining agreement. Plaintiff points out that new employees, under the agreement, are on a probationary status for 45 days, during which time, *inter alia*, they do not obtain seniority. Doc. # 15, ex. 4, Art. 12.1(c). It is undisputed that Plaintiff was discharged from Aeronca while in a probationary status. Yet Defendants persuasively observe that many provisions of the agreement apply to *both* probationary *and* non-probationary employees. Doc. # 19, pp. 2–3; doc. # 21, pp. 2–3. Moreover, Defendants correctly observe that Plaintiff's rationale runs counter to the well-established rule in federal labor law that certified unions *represent* all employees in a specific bargaining unit, even those not formerly members of the union. 29 U.S.C. § 159(a); R. Gorman, Labor Law 375–80 (1976). Thus, it is fair to say that, under the plain meaning of the terms in the collective bargaining agreement, Plaintiff was, in the words of the ADEA proviso, "covered by [the] collective bargaining agreement."

Plaintiff's second rationale is somewhat more troublesome. In contending that Defendants decided to discharge him, because of his age, without reference to the agreement, Plaintiff relies on two depositions in the record. In one deposition, the Union president Slatton recounted his conversation with Mr. Sciutto, concerning Plaintiff's age, without referring to the agreement. Deposition at pp. 9–13. Later in the deposition, however, Slatton stated that, in his mind, the terms of the agreement precluded the employment of Plaintiff. *Id.* at pp. 26–28. In another deposition, Ronald Wilson, who was briefly employed by Aeronca as a personnel manager, flatly stated that Plaintiff could have remained as an employee even without gaining seniority, and that nothing in the agreement required Plaintiff to be discharged. Deposition of Ronald Wilson, pp. 7–10. The Wilson deposition does not precisely adopt Plaintiff's assertion that the decision to hire and discharge him was simply made without regard to the dictates of the agreement. Rather, when the deposition is read as a whole, Wilson argued that the terms of the agreement did not prevent the hiring of Plaintiff.

■ To accept Plaintiff's second rationale, or at least to acknowledge that

genuine issues of material fact are raised, by the above depositions regarding same, requires examination of materials extraneous to the collective bargaining agreement. It is settled that such an exercise is to be undertaken only when the agreement is *not* "clear and unambiguous in its meaning." *Allied Industrial Workers v. General Electric Co.*, 471 F.2d 751, 756–57 (6th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973); *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1339 (6th Cir. 1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976). *See also, United States v. Leigh*, 515 F.Supp. 405, 416–17 (S.D.Ohio 1981). A careful examination of the collective bargaining agreement herein reveals no such unclarity or ambiguity. By its terms, Plaintiff could not have been, or remained, employed. As previously noted, the agreement states that the principle of seniority shall apply to all employees, doc. # 15, ex. 4, Art. 12.1(A), and that probationary employees are without seniority for 45 days. *Id.*, Art. 12.(c). The agreement further states that employees lose seniority, and have their names removed from the seniority list, when they reach age 65, *id.*, Art. 13.1(B). Any employee removed from the seniority list is "deemed to have quit." *Id.*, Art. 13.2. These provisions, taken together, simply prevent any employee from gaining seniority when he is over 65. Any such probationary employee would have to be discharged at the end of the 45-day probationary period. Thus, the agreement precluded the employment of Plaintiff, and consideration of alternative interpretations is unnecessary.[6]

Accordingly, the Court finds no genuine issues of material facts are raised in the record, with respect to the alleged discriminatory acts in 1978 and 1979, based on Plaintiff's untimely filing with the EEOC and the non-applicability of the ADEA to the collective bargaining contract at issue. The only issue remaining for determination is whether there are genuine issues of ma-

terial fact regarding the alleged discriminatory acts in 1980, some or all of which are covered by Plaintiff's filing with the EEOC in 1981. *Cf.* footnote 3, *supra.* For reasons to be set forth *infra*, dealing with Plaintiff's motion for summary judgment, the Court finds that no such genuine issues of material fact are raised.

For all of the foregoing reasons, the Court finds that Defendants' motions for summary judgment must be, and are, sustained.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS OVERRULED

As recounted above, Plaintiff's filing with the EEOC was only timely for alleged discriminatory acts during 1980. Thus, Defendants may be liable, under the ADEA, for said acts.

In his motion, Plaintiff argues that, at the least, he has established a prima facie case of discrimination under the standards of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* That is, Plaintiff asserts that (1) he is a member of a protected class, (2) he was qualified for the job, and performed satisfactorily, and (3) despite his qualifications and performance, he was discharged, and not rehired.

■ Plaintiff's theory is incorrect. The Sixth Circuit has expressly refused to mechanically apply the prima facie standards from Title VII cases to ADEA cases. *Tuohy v. Ford Motor Co.*, 675 F.2d 842, 844 (6th Cir. 1982); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir. 1975). Instead, courts must focus on "[t]he ultimate issue [of] whether age was a factor in a decision of an employer to terminate an ADEA claimant

---

**6.** The Court also notes that even if it is incorrect in its construction of the agreement, or in its conclusion that no genuine issues of material fact are raised by Plaintiff's second rationale, Plaintiff's untimely filing with the EEOC precludes any need to consider alleged discriminatory acts occurring in 1978 or 1979.

. . . ." *Ackerman v. Diamond Shamrock Corp., supra.*

Applying this standard to the alleged acts in 1980 shows the absence of genuine issues of material fact. As previously recited in this opinion, the only acts at issue in 1980 were Plaintiff's phone calls to the Aeronca employment office in that year. In those calls, he did not identify himself or mention his age. He also admits' that, on said calls, Aeronca only stated that it was not hiring. Deposition at 27–29. These facts, taken as true for purposes of a summary judgment motion, simply do not indicate, or raise any inference, that Plaintiff's age played a factor in Aeronca's continuing decision not to hire him in 1980. Based on these facts, Plaintiff's conclusory claims of continuing discrimination do not shift the burden, in an ADEA case, to the Defendants to justify the 1980 decisions, over the phone, not to rehire him. *Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir. 1982) (per curiam); *Ackerman v. Diamond Shamrock Corp., supra.*

For this reason, and for the reasons developed earlier in this opinion, Plaintiff's motion for summary judgment must be, and is, overruled.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' motions for summary judgment are sustained, and Plaintiff's motion for summary judgment is overruled.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.