**Douglas A. DOWTY, Plaintiff,**

v.

**PIONEER RURAL ELECTRIC COOPERATIVE, INC., et al., Defendants.**

**No. C–3–82–005.**

United States District Court, S.D. Ohio, W.D.

Aug. 26, 1983.

Ted L. Earl, Columbus, Ohio, for plaintiff.

Neil F. Freund, Sorrell Logothetis, Dayton, Ohio, Donald F. Menagh, New York City, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DEFENDANT UNION'S MOTION TO FILE MEMORANDUM SUSTAINED; MEMORANDUM DEEMED FILED; FURTHER PROCEDURES ORDERED OF COUNSEL FOR DEFENDANT PIONEER

RICE, District Judge.

Plaintiff brings this suit under § 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185, against his former employer, Defendant Pioneer Rural Electric Company, Inc. (Pioneer), and his former union, the Utility Workers Union of America. Both Defendants have moved (Docs. # 8 & 9) to dismiss or for summary judgment, on the ground that Plaintiff's lawsuit is barred by the applicable statute of limitations. This Court agrees with the Defendants and, for the reasons outlined below, sustains said motions.

## I.

An examination of the record reveals the following facts. Plaintiff worked for Pioneer and was a member of the union. Pioneer and the union entered into a collective bargaining agreement, which contained a grievance procedure, culminating in final and binding arbitration. From 1973 until his termination in 1981, Plaintiff engaged in outside employment involving electrical work. On September 15, 1980, Pioneer issued Policy Rule 6–R, forbidding employees from engaging in certain types of outside employment; on November 7, 1980, it informed Plaintiff that it would dismiss him pursuant to the new rule. Plaintiff filed a grievance, in which the Union represented him. Pursuant to the procedure, an arbitration hearing was held on May 15, 1981. A three-member arbitration panel issued a decision and award on June 24, 1981. The panel denied the grievance challenging the validity of Rule 6–R, recommended that Plaintiff be given ten days to discontinue certain outside activities in conflict with Pioneer's business, but further stated that Plaintiff should be permitted to *sell* electrical generators, since that would not conflict with Pioneer's business. Decision at 15–16. These holdings, except for the very last, are reflected in the one-page "Award" issued with the decision.

The affidavit of a union official further reveals that Plaintiff attended a meeting on July 7, 1981, with three union officials, at which time Plaintiff was orally informed of the arbitration decision and award. Affidavit of Edward J. Coggins, Jr., attached to Doc. # 24, at ¶¶ 8–14. (The Defendant Union has moved (Doc. # 18) to file a supplemental reply memorandum, to which the Coggins affidavit is attached. This motion is sustained. Therefore, the Court has considered the Coggins affidavit in rendering its decision.) At that time, the recommendations of the panel (reflected in the decision, but not fully in the award) were clarified in that Plaintiff "could continue to sell electrical generators and perform related work, such as servicing and installing electrical generators." ¶ 12. The officials told Plaintiff that the union would dissent from parts I and II of the award (upholding the validity of Rule 6–R), and concur in parts III and IV of the award (permitting the union to challenge the rule, and giving Plaintiff the opportunity to discontinue his

outside activities in ten days). ¶ 13. Plaintiff was advised "to take his job back in accordance with the terms of the award." ¶ 14. Plaintiff does not directly contest any of the assertions set forth in the affidavit. However, he states that he was told at the July 7 meeting that he would receive a copy of the decision and award by certified mail (which he did on July 10). Affidavit of Douglas A. Dowty, ¶ 34, attached to Doc. # 22. He also contends that Coggins misrepresented, at least in part, the recommendation of the arbitration panel, since their decision gave no option of continuing to "service and install" generators. ¶ 5.

Plaintiff filed this action on January 8, 1982, as a "hybrid" § 301/fair representation lawsuit. In his complaint, he alleged that Pioneer breached the collective bargaining agreement through the promulgation and implementation of Rule 6–R. He also alleged that the Union breached its duty to fairly represent him in the grievance and arbitration procedure,

> by failing to adequately prepare and present plaintiff's position, by failing to offer or allow the assistance of counsel, by failing to object or waiving the objection to the appointment of a non-neutral arbitrator, by concurring in the arbitration award, by failing to further prosecute plaintiff's claim and by failing to take other actions necessary to protect the rights of plaintiff.

Complaint, ¶ 23.

## II.

All the parties in this case have requested the Court to examine various materials outside the pleadings. Accordingly, it is proper to treat Defendants' pending motions as ones for summary judgment, under Fed.R.Civ.P. 56. Under Rule 56, Defendants' motions can only be sustained when the movants conclusively demonstrate, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Board of Education v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

As noted above, Defendants have moved on the basis that Plaintiff's action is barred by the applicable statute of limitations. The parties agree that the resolution of this issue is controlled by the Supreme Court's recent decision in *DelCostello v. International Brotherhood of Teamsters*, —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).[1] There, the Court held that "hybrid" § 301 actions, such as this one, would be governed by the six-month limitations period found in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). *Id.* 103 S.Ct. at 2285.

Since the within matter was filed on January 8, 1982, the limitations period must have begun running, at the latest, on July 8, 1981. In other words, Plaintiff's action must have accrued on or after July 8, 1981, to fall within the six-month period.[2] The parties vigorously contest *when* this action

---

1. This Court has recently held that *DelCostello* should be applied retroactively, *i.e.*, to all "hybrid" § 301 suits pending on the date of that decision. *See, McPeek v. Dayton Forging and Heat Treating Co.*, 574 F.Supp. 300 (S.D. Ohio 1983).

2. This assumes that the "six months" language from NLRA § 10(b) is measured by six *calendar* months, not 180 days. If the latter measurement is used, then, according to the Court's calculations, this action was untimely filed no matter *which* accrual date is utilized (*see*, text, *infra*). If Defendants date (July 7, 1981) is used, then the action was filed 185 days later; if

Plaintiff's date (July 10, 1981) is used, then the action was filed 182 days later.

At least one court has held, without citing authority, that in a § 301 suit, the six-month period of NLRA § 10(b) is measured by 180 days. *Weller v. G.M.W.*, 548 F.Supp. 560, 562 (N.D.Ill.1982). On the other hand, most courts seem to assume, without discussion, that § 10(b) is measured by six calendar months. *See, e.g., NLRB v. R.L. Sweet Lumber Co.*, 515 F.2d 785, 787 (10th Cir.), *cert. denied*, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975). Given that the parties herein apparently assume that the latter measure is correct, the Court will follow the same course.

accrued. Defendants argue that the action accrued on July 7, 1981, when Plaintiff learned of the arbitration award and decision. Plaintiff insists that the accrual date is July 10, 1981, when he received a copy of the arbitration award and decision by mail. While the issue is a very close one, the Court must agree with the Defendant.

This Court has recently observed that a § 301 action accrues no later than the time when a Plaintiff "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." *Rose v. General Motors Corp.*, 573 F.Supp. 747, 752 (S.D.Ohio 1983), slip op. at 9–10 (*quoting, Santos v. District Council of New York City*, 619 F.2d 963, 969 (2d Cir.1980)). *See also, Adkins v. General Motors Corp.*, 573 F.Supp. 1188, 1192–94 (S.D.Ohio 1983), *appeal and cross-appeal docketed after entry of final judgment*, Nos. 83–3392, 83–3416 (6th Cir. June 14, 1983).[3]

Applying this test to the facts of this case indicates that the cause of action accrued on July 7, 1981. During the meeting held on that day, Plaintiff learned of the arbitration panel's decision, read the hearing briefs of the union, Coggins affidavit, ¶¶ 10–11, and was informed of the response of the union to the decision. At that time, he was also aware of the union's conduct during the grievance and arbitration procedure, including the fact that the union had refused to permit him to be represented by his own counsel. Doc. #12. By July 7, Plaintiff was armed with all the facts with which he (or his attorney) needed to draft the paragraph in the complaint, quoted above, which alleges that the union breached its duty of fair representation. In short,

by July 7, 1981, Plaintiff "knew or reasonably should have known that" the union, in his opinion, had breached its duty of fair representation.

In his memoranda, Plaintiff emphasizes that he did not receive "formal, official notice" of the arbitration decision and award until July 10, 1981, when he received a copy in the mail. Defendants appear to concede as much, but this is beside the point. There is no talismanic nature to Plaintiff receiving, or not receiving, "official" notice of the panel's decision and award. A review of the collective bargaining agreement herein indicates that only the union and management are formal parties to the arbitration procedure. This Court has previously observed that only formal parties to the arbitration are required to be served with copies of the decision and award, Ohio Rev.Code Ann. § 2711.13 (Page 1982), and that failure of the employee to receive a copy of the decision and award simply does not toll the running of limitations periods in § 301 actions. *See, Brown v. Duff Truck Lines, Inc.*, 557 F.Supp. 194, 196 (S.D.Ohio 1983), *appeal docketed*, No. 83–3140 (6th Cir. March 1, 1983); *Hudson v. Teamsters Local Union No. 957*, 536 F.Supp. 1138, 1145 n. 1 (S.D.Ohio 1982). Plaintiff did indeed receive a copy of the decision and award, apparently as a matter of course or practice. But nothing in the record indicates that same was required. Carrying Plaintiff's theory to its logical conclusion would yield the absurd result that, even if an employee otherwise knew of an arbitration decision, his § 301 action would *never* accrue if he never received a copy of same, and he would possess an indefinite ability to file a § 301 suit. *See, Brown, supra.* Thus, the Court is not convinced that there

---

**3.** In *Rose, supra,* at 751 n. 3 and *Adkins, supra,* at 1192 n. 6, this Court pointed out that the Sixth Circuit, *Echols v. Chrysler Corp.*, 633 F.2d 722, 725–26 (6th Cir.1980), apparently views the accrual issue to be a matter of *state* law, while other circuits, *e.g., Santos, supra,* 619 F.2d at 968, view it to be a *federal* issue. This disparity is of no consequence since Ohio law regarding accrual of actions is consistent with analogous

federal law. *Rose, supra,* at 751–52. The Ohio Supreme Court's recent adoption of the "discovery" rule in several torts contexts, *e.g., Oliver v. Kaiser Community Health Foundation,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983) (medical malpractice); *O'Stricker v. Walter Corp.,* 4 Ohio St.3d 84, 447 N.E.2d 727 (1983) (asbestos injury), only reinforces this conclusion.

is even at least a "jury issue" (a genuine issue of a material fact) as to the date of Plaintiff's "actual notice," as Plaintiff argues, and holds that, on the facts of this case, the date of the "official" notice is irrelevant.

In addition, it appears that a union official at the July 7, 1981, meeting may have slightly misrepresented the nature of the award. As outlined above, the decision and award did not, in fact, permit Plaintiff to service and install electrical generators. Once again, however, this fact has little, if any, bearing on when the action accrued. The misrepresentation does not diminish the fund of knowledge developed by Plaintiff by July 7, 1981, which enabled him to know that the union breached its duty of fair representation, as outlined in the allegations in his complaint.

The Court is aware that the result in this case may seem harsh. Given an accrual date of July 7, 1981, Plaintiff filed his suit only *one* day late. But the law must draw lines somewhere, and the interests served by the use of NLRA § 10(b) as a limitations period in hybrid § 301 cases (*i.e.*, the need for uniformity and the rapid resolution of labor disputes, *see, DelCostello,* 103 S.Ct. at 2292-94) would be thwarted if unjustified exceptions were made to the six-month period. To the extent equitable tolling is appropriate in a § 301 action, *see, Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 708, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966), the Court is unaware of any facts in the record which would justify tolling on this case, even for one day.

For all of these reasons, the Court holds that Plaintiff's cause of action accrued on July 7, 1981, and that his filing of suit on January 8, 1981, was untimely, and barred by the applicable statute of limitations.

### III.

Based on the aforesaid, the Court sustains the pending motions for summary judgment. The Court will order that judgment be entered in favor of the Defendants once Pioneer files a *verified* copy, Rule 56(e), of the collective bargaining agreement and the arbitration decision and award with the Court, it appearing that the copies of said documents currently in the record are not verified. Counsel should file said documents within ten days after receipt of this entry. The Court will terminate the case upon its docket records once said materials are filed.