**Ronald BELIC, et al., Plaintiffs,**

**v.**

**GENERAL MOTORS CORP., et al., Defendants.**

**No. C–3–83–232.**

United States District Court, S.D. Ohio, W.D.

April 2, 1984.

David L. Hall, Dayton, Ohio, for plaintiffs.

Joseph Buchanan, Dayton, Ohio, J.R. Wheatley, General Motors Corp., Detroit, Mich., for defendant General Motors Corp.

Richard F. Rice, Kettering, Ohio, for defendant IUE and IUE Local 801.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RICE, District Judge.

This case, like others dealt with by this Court, concerns the reassignment and/or layoff of numerous employees from the Dayton, Ohio, plants of General Motors Corporation (GMC). *See, Adkins v. General Motors Corp.*, 573 F.Supp. 1188 (S.D. Ohio 1983), *appeal and cross-appeal docketed,* Nos. 83–3392, 83–3416 (6th Cir. May 26, 1983); *Association of Frigidaire Model Makers v. General Motors Corp.*, 573 F.Supp. 236 (S.D.Ohio 1983), *appeal docketed,* No. 83–3754 (6th Cir. October 25, 1983); *Former Frigidaire Employees Assoc. v. Electrical Workers Local 801*, 573 F.Supp. 59 (S.D.Ohio 1983), *appeal docketed,* No. 83–3820 (6th Cir. Nov. 1983). Plaintiffs in this lawsuit, filed on March 15, 1983, allege that Defendants GMC, the International Union of Electrical, Radio and Machine Workers, and its Local 801, violated § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (breach of contract), and the duty of fair representation implied by the federal labor law. The Defendant unions and Defendant GMC have moved (Doc. # 7 & 10) for summary judgment, pursuant to Fed.R.Civ.P. 56, on statute of limitations grounds. The motions have been briefed under S.D.Ohio R. 4.0.2. For the following reasons, the Court overrules the motions.

I.

The relevant facts gleaned from the record appear to be undisputed, although counsel disagree on the significance to be accorded those facts. Plaintiffs, nine "skilled trades employees", are all present employees of GMC, and members of Local 801. Like the claims raised in the above-mentioned litigation, Plaintiffs' action arose out of the 1979 sale of GMC's Frigidaire Division to White Consolidated Industries, and the conversion of the Frigidaire facilities to Chevrolet plants. In February of 1979, the Unions and GMC consummated a "Special Memorandum of Agreement" (supplementing then-existing collective bargaining agreements (CBA)) which, *inter alia,* set out criteria to govern the seniority of Frigidaire workers who transferred to the Chevrolet plants. This agreement, as well as other relevant CBA's, was ratified by the Local 801 membership in 1979. *See generally, Adkins,* 573 F.Supp. at 1189–90.

As noted above, Plaintiffs were all skilled trades employees (journeyman equipment repairmen) at GMC's Frigidaire Division. Under one of the Local Agreements negotiated between Defendants, a new Welder Equipment Maintenance and Repair (WEMR) classification was established at the Chevrolet Assembly Plant. This classification was to be filled by (former) Frigidaire workers who had been in analogous classifications at the Frigidaire plant. Section II, art. 6 of the 1979 Local Agreement governed the seniority of the transferred Frigidaire workers:

When a Journeyman is transferred from one skilled trades classification to another, there shall be no loss of seniority; however, he will have a date of entry seniority in the classification to which he is transferred and will also retain and accumulate seniority in the classification from which he was transferred.

Doc. # 7, ex. B, p. 2.

Plaintiffs were recalled to work under this scheme between August and October of 1980, and knew upon recall that they, and other similarly situated workers, were assigned a skilled trades seniority date

with Chevrolet that was the same as the *plant* seniority date they had with Frigidaire. (An employee has both seniority as an employee (plant), and seniority in his or her trade; the two may not be co-equal). However, at least according to Plaintiffs, this state of affairs was satisfactory until late in 1982, when GMC began using a *Frigidaire* skilled trades seniority date, rather than the Chevrolet date of entry, to determine seniority. At that time, a number of other journeymen, recalled to Chevrolet *after* Plaintiffs but with greater Frigidaire trades seniority, "passed" Plaintiffs on the Chevrolet seniority lists. Plaintiffs promptly grieved the matter pursuant to the CBA on November 12, 1982, but the union unilaterally withdrew the grievances on December 17, 1982, asserting that they were without merit.

Plaintiffs filed this "hybrid" § 301/duty of fair representation lawsuit on March 15, 1983, based on the foregoing series of events. In particular, Plaintiffs allege therein that GMC's use of seniority dates breached section II, art. 6 of the Local Agreement, which they interpret to provide "that an employee's seniority date at Chevrolet will be the date the employee is called to work at Chevrolet." Complaint, ¶ 10.[1] Likewise, they allege that the unions breached their duty of fair representation by, *inter alia,* "failing to enforce" contractual provisions and "unilaterally withdrawing and closing the grievances of the Plaintiffs." Complaint, ¶ 14 a.-b. Relief in the form of modification of seniority, back-pay and restoration of other benefits is requested.

## II.

Defendants contend that the lawsuit is barred by the applicable six-months statute of limitations found in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). They argue that this result is compelled by the Supreme Court's decision in *DelCostello v. International*

*Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) and this Court's decision in *Adkins, supra. DelCostello* held that NLRA § 10(b) should govern hybrid § 301 lawsuits against *both* employer and union defendants, the same conclusion reached by this Court in *Adkins,* a pre-*DelCostello* decision. Plaintiffs' action is barred by the six-month statute, Defendants contend, since their action accrued at the time of recall in mid-1980, when they knew or should have known that the unions agreed to the seniority scheme utilized by GMC. In contrast, Plaintiffs argue that the action accrued only in late 1982, when they were "passed" on the Chevrolet seniority lists by other workers, and unsuccessfully attempted to grieve same. The latter accrual date would fall within the statute of limitations. For the following reasons, the Court agrees with Plaintiffs.

On previous occasions, this Court has observed that a hybrid § 301 action accrues when the Plaintiffs "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred, even if some possibility of non-judicial enforcement remained." *Rose v. General Motors Corp.,* 573 F.Supp. 747, 752 (S.D. Ohio 1983); *Dowty v. Pioneer Rural Electric Cooperative, Inc.,* 573 F.Supp. 155, 158 (S.D.Ohio 1983), *appeal docketed,* No. 83–3621 (6th Cir. Sept. 22, 1983) (both cases quoting *Santos v. District Council of New York City,* 619 F.2d 963, 969 (2d Cir.1980)). *Accord, Scott v. Teamsters Local 863,* 725 F.2d 226, 229 (3d Cir.1984); *Gustafson v. Cornelius Co.,* 724 F.2d 75, 79 (8th Cir. 1983) (relying on *Butler v. Teamsters Local 823,* 514 F.2d 442, 448–50 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975)); *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

---

**1.** As Defendants arc fond to point out, Plaintiffs' counsel advanced what is essentially the opposite theory in related litigation, contending that another group of former Frigidaire workers

should have *retained* their seniority when placed in Chevrolet jobs. *See Association of Frigidaire Model Makers v. General Motors Corp., supra.*

Applying this formula, Plaintiffs' actions arguably accrued in December of 1982, when the union refused to further process their grievances concerning seniority. At that time, Plaintiffs knew, or should have known, that the unions breached their duty of fair representation by refusing to further process the grievances. Of course, that is not the only act alleged to have constituted a breach of the duty. As outlined above, Plaintiffs *also* contend that the unions failed "to enforce the contractual provisions" of the Local Agreement, or to "protect [their] seniority dates" or their "employment rights." Complaint, ¶ 14a.-e. Arguably, Plaintiffs were or should have been aware of some or àll of these acts between 1979 and late 1982. Indeed, Defendants *might* even be able to demonstrate that Plaintiffs were or should have been aware of the futility of filing grievances *before* they actually did so in late 1982. *Cf. Scott v. Teamsters Local 863, supra.* Thus, Plaintiffs' actions accrued in late 1982 *or*, at the very least, genuine issues of material fact remain with regard to whether the actions occurred at that time.[2] This threshold issue will be the initial (and potentially dispositive) one considered by this Court, and/or the finder of fact at trial. Depending on what this Court holds, or what the finder of fact determines at trial, some or all of the alleged unlawful acts by the unions may be found to be time-barred, and thus not serve as predicates for liability.

As Plaintiffs point out, Defendants mischaracterize the type of action set out in the complaint. Defendants suggest that the "gravaman [sic] of Plaintiffs' action is that the [unions] failed to represent them by *negotiating* [the] agreement" concerning the seniority in question. Defendant Unions' Motion, doc. #7, p. 7 (emphasis added). That, indeed, was the principal focus of previous, related litigation, *e.g., Adkins, supra, Association of Frigidaire Model Makers, supra,* and *Former Frigidaire Employees Association, supra.* For that reason, this Court was persuaded to establish an accrual date coinciding with the loss of jobs, or recall rights, since the unions' alleged breach of the duty of fair representation was part and parcel of the negotiation of the agreements under attack. The accrual date could not focus on the filing of grievances, because no grievance procedure was, or could have been, instituted with regard to those claims. *See* 573 F.Supp. at 1192–94, 1197; 573 F.Supp. at 237–38; 573 F.Supp. at 60, 62.

In this case, however, Plaintiffs take pains to observe that they are *not* challenging the validity of the Local Agreement or other CBA's. Instead, they are only contesting the Defendants' application of those agreements. This action, accordingly, partakes more of a typical hybrid § 301 action, focusing on the unions' conduct during the grievance procedure, rather than upon the wording of the agreements and/or the manner in which they were negotiated.

■ One recent decision, however, does seem to support Defendants' position. *Benson v. General Motors Corp.,* 716 F.2d 862 (11th Cir.1983) (per curiam), involved facts quite similar to the instant case. There, the union and GMC entered into an agreement governing transfer of seniority rights, when GMC workers moved to jobs in new GMC plants. *Id.* at 863. Plaintiffs brought a hybrid § 301 suit, apparently contending that GMC breached the agreement by not affording them "preferential consideration" at the new jobs. *Id.* The grounds for the alleged breach of fair representation by the union are not made

**2.** The parties do not expressly contest the Plaintiffs' knowledge or state of mind regarding the accrual issue. However, courts are often loath to resolve questions of intent or state of mind on motions for summary judgment, *e.g., Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1127 (6th Cir.1981), *reh'g denied,* 668 F.2d 878 (6th Cir.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982), although judgment on that issue is, of course, not impossible, *e.g., Smith v. Pan Am World Airways,* 706 F.2d 771, 773 (6th Cir.1983) (per curiam). *See also* Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 471 (1984). In the instant case, it can be said that Defendants simply have not put materials in the record to conclusively resolve the intent issues on the accrual question.

clear. The court held that the action accrued *before* their eventual layoffs, since

Plaintiffs' injury, the loss of seniority, manifested itself in many forms including their layoff. For the purpose of determining when the § 10(b) period begins to run, we look to when plaintiffs either were or should have been aware of the injury itself, not to when plaintiffs became aware of one of the injury's many manifestations.

*Id.* at 864. Thus, the *Benson* court did not focus on the union's breach of the duty of fair representation in deciding the accrual question.

This Court believes that the analysis *Benson* employed is appropriate when the union's conduct is related to the negotiations of the CBA in question. Indeed, this Court utilized that type of analysis in the cases mentioned above. However, when the unions' misconduct is separated from the negotiation of the CBA (e.g., the withdrawal of grievances, as herein), the facts surrounding the unions' conduct in implementing the agreement provides the appropriate point for accrual of the action. *See Smart v. Ellis Trucking Co., Inc.,* 580 F.2d 215, 219 & n. 5 (6th Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). This result follows from the prerequisites for a hybrid § 301 suit:

In a § 301 suit, it is proper to consider that a claim accrues against the company defendant when it accrues against union defendants, since the predicate for a typical § 301 action against an employer is proof that the union breached its duty of fair representation. *Bowen v. United States Postal Service,* [459] U.S. 212, [221] [224], 103 S.Ct. 588, 594–95, 74 L.Ed.2d 402 (1983); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). *See also, Butler v. Teamsters Local 823,* 514 F.2d 442, 450 (8th Cir.1975), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 47 L.Ed.2d 249 (1975). *See generally, Rose v. General Motors Corp.,* 573 F.Supp. 747 at 752 (S.D.Ohio 1983).

*Adkins,* 573 F.Supp. at 1192 (footnote omitted). It is also supported by the policy of requiring exhaustion of grievance remedies before permitting a hybrid § 301 suit to go forward. *DelCostello,* 103 S.Ct. at 2290. Both of these factors—proof of a breach of the duty of representation as a predicate to a suit against the employer, and exhaustion (and presumed availability) of grievance procedures—supports an accrual analysis focusing on the unions' conduct. *See Gustafson v. Cornelius Co.,* 724 F.2d at 79 & n. 9. Thus, the standard found in *Benson* cannot provide the appropriate accrual analysis for *all* hybrid § 301 actions. It is also worth noting that *Benson* neither cited nor distinguished the decisions from the Second (*Santos*) or Eighth (*Butler*) Circuits which this Court applied in *Rose* and *Dowty, supra.*

For these reasons, the Court holds that Plaintiffs' action is not time-barred *or,* at least, genuine issues of material fact regarding whether said action is time-barred are raised and must be resolved by this Court or at trial.

### III.

In its motion, GMC also vigorously argues that judgment in its favor is appropriate since, apart from the statute of limitations defense, the language of the Local Agreement (quoted above) and other relevant CBA's simply does not support Plaintiffs' interpretation of same. GMC argues, in other words, that, as a matter of law, it did not breach the CBA.

The Court does not agree. In its motion, GMC has submitted a lengthy recital of facts which support a plausible interpretation of the CBA. To hold in favor of GMC requires more than that, however. Courts are to construe provisions of a CBA like any contract, without resort to extraneous sources, only when the agreement is "clear and unambiguous in its meaning." *Moon v. Aeronca, Inc.,* 541 F.Supp. 747, 754 (S.D.Ohio 1982) (citations omitted). Here, the Court agrees with Plaintiffs that the seniority provisions at issue are "complex," Plaintiffs' Memorandum Contra, doc.

# 14, p. 3, and simply do *not* unambiguously support GMC's interpretation. The provisions can plausibly be read to support either Plaintiffs *or* Defendants interpretation of same. Accordingly, summary judgment on this issue is not appropriate, and the finder of fact at trial, assuming this point is reached, will need to determine the meaning of these provisions through application of extrinsic evidence. *Id. See also Apponi v. Sunshine Biscuits, Inc.,* 652 F.2d 643, 651 n. 12 (6th Cir.1981).[3]

### IV.

For the above-stated reasons, the Court overrules the pending motions for summary judgment.

**3.** Even if GMC were correct, the case, while currently styled as a hybrid § 301/duty of fair representation suit, could presumably go forward on only the latter ground. *E.g., Newton v.* *Electrical Workers Local 801,* 507 F.Supp. 439 (S.D.Ohio 1980), *aff'd,* 684 F.2d 401 (6th Cir. 1982).