OPINION
{¶ 1} Plaintiff-appellant, Shawn Koehring, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"), to dismiss plaintiff's motion *Page 2 
to vacate an adverse arbitrator's award. For the following reasons, we affirm the common pleas court's judgment.
 {¶ 2} After plaintiff, a corrections officer and employee of ODRC, was denied a promotion to the rank of Sergeant, he filed a grievance under the terms of a collective bargaining agreement between ODRC and plaintiff's union, Ohio Civil Service Employees Association, AFSCME Local 11, AFL-CIO ("union"). Plaintiff's grievance ultimately was submitted to arbitration where an arbitrator determined that his grievance was untimely filed. Plaintiff then filed a motion in the Franklin County Court of Common Pleas seeking to vacate the adverse arbitration award pursuant to R.C. 2711.10(D).[1] While plaintiff's motion was before the common pleas court, ODRC moved the court to dismiss plaintiff's motion for lack of standing. The common pleas court granted ODRC's motion.
 {¶ 3} From this judgment, plaintiff now appeals. See, generally, R.C.2711.15 (providing that "[a]n appeal may be taken from an order confirming, modifying, correcting, *Page 3 
or vacating an award made in an arbitration proceeding or from judgment entered upon an award").
 {¶ 4} Plaintiff assigns a single error for our consideration:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE MOTION TO DISMISS WHEN IT IMPROPERLY FOUND THAT APPELLANT SHAWN KOEHRING WAS NOT THE PROPER PARTY TO MOVE TO VACATE THE ARBITRATOR'S DECISION PURSUANT TO R.C. 2711.10.
 {¶ 5} Although the parties have not raised whether subject-matter jurisdiction properly lies, on our own motion we begin our examination of defendant's appeal by considering whether the common pleas court's judgment is a final appealable order and whether this court properly has subject-matter jurisdiction of the instant appeal.
 {¶ 6} "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." Pratts v. Hurley, 102 Ohio St.3d 81,2004-Ohio-1980, at ¶ 11, citing United States v. Cotton (2002),535 U.S. 625, 630, 122 S.Ct. 1781; State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 75, reconsideration denied (1999), 84 Ohio St.3d 1475. Accordingly, whether subject matter properly lies may be raised sua sponte by an appellate court. Mogavero v. Lombardo (2001), Franklin App. No. 01AP-98, citing State ex rel. White v. Cuyahoga Metro. Hous.Auth. (1997), 79 Ohio St.3d 543, 544.
 {¶ 7} Here, although the common pleas court's judgment granted ODRC's motion to dismiss plaintiff's motion for lack of standing, the court's judgment did not expressly adjudicate plaintiff's motion to vacate the arbitrator's award. Therefore, because the common pleas court granted ODRC's motion to dismiss plaintiff's motion for lack of *Page 4 
standing, we find that this was an implied denial of plaintiff's motion and an implied dismissal with prejudice of plaintiff's motion, which resulted in a complete determination of all matters before the common pleas court. Accordingly, we construe the common pleas court's judgment as a final appealable order and also find that plaintiff's appeal is properly before this court. See General Acc. Ins. Co. v. Ins. Co. of N.Am. (1989), 44 Ohio St.3d 17, 21, citing Wise v. Gursky (1981),66 Ohio St.2d 241 (stating that "even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54[B] is not required to make the judgment final and appealable").
 {¶ 8} "`The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented.'"Cuyahoga Cty. Bd. of Commrs. v. State, 112 Ohio St.3d 59,2006-Ohio-6499, at ¶ 22, quoting Ohio Contrs. Assn. v. Bicking (1994),71 Ohio St.3d 318, 320, reconsideration denied (1995),71 Ohio St.3d 1459. "Whether established facts confer standing to assert a claim is a matter of law." Portage Cty. Bd. of Commrs. v. Akron,109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 90, reconsideration denied,109 Ohio St.3d 1427, 2006-Ohio-1967; see, also, Cuyahoga Cty. Bd. of Commrs., at ¶ 23.
 {¶ 9} Here, plaintiff's sole assignment of error challenges the common pleas court's determination that the facts of this case failed to confer standing upon plaintiff; accordingly, it presents us with a question of law. See Portage Cty. Bd. of Commrs., at ¶ 90; Cuyahoga Cty. Bd. ofCommrs., at ¶ 23. Thus, our standard of judicial review is de novo.Portage Cty. Bd. of Commrs., at ¶ 90, citing Goodyear Tire Rubber Co.v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 4, reconsideration denied, 96 Ohio St.3d 1489, 2002-Ohio-4478; CuyahogaCty. Bd. of Commrs., at ¶ 23. Cf. Creatore *Page 5 v. Robert W. Baird Co., 154 Ohio App.3d 316, 2003-Ohio-5009, at ¶ 8, citing Union Twp. Bd. of Trustees v. Fraternal Order of Police, OhioValley Lodge No. 112, 2001-Ohio-8674, at ¶ 6 (stating that an appellate court "must confine [its] review of arbitration proceedings to an evaluation of the order issued by the common pleas court and determine whether the trial court erred as a matter of law").
 {¶ 10} "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." BP Communications Alaska, Inc. v. Cent. CollectionAgency (2000), 136 Ohio App.3d 807, 812, dismissed, appeal not allowed,89 Ohio St.3d 1464, citing Hall v. Ft. Frye Loc. School Dist. Bd. ofEdn. (1996), 111 Ohio App.3d 690, 694; see, also, Hicks v. Leffler
(1997), 119 Ohio App.3d 424, 427 (stating that de novo review requires an appellate court to review a judgment independently).
 {¶ 11} Accordingly, applying a de novo standard of judicial review, we shall independently and non-deferentially examine the common pleas court's legal conclusion that plaintiff lacked standing to move to vacate the arbitrator's decision under R.C. 2711.10.
 {¶ 12} Relying upon Leon v. Boardman Twp., 100 Ohio St.3d 335,2003-Ohio-6466, the common pleas court found that, although the plaintiff appeared to have a meritorious argument for vacating the arbitrator's decision, he was not the proper party to pursue the matter in the common pleas court. As a consequence, the common pleas court granted ODRC's motion to dismiss the plaintiff's motion for lack of standing.
 {¶ 13} In Leon, Andre Leon, a patrolman for Boardman Township, was discharged for a violation of the township's residency requirements for its civil-service employees. Id. *Page 6 
at ¶ 1. Leon's discharge was arbitrated on his behalf by his union under the terms of a collective bargaining agreement between the township and the union. Id. An arbitrator reduced Leon's discharge to a suspension and conditionally reinstated Leon; however, the arbitrator declined to award back pay. Id. After Leon's union denied Leon's request for further representation concerning the issue of back pay, Leon moved the trial court to vacate the arbitration award pursuant to R.C. 2711.10. Id. Finding that Leon lacked standing, the trial court dismissed Leon's application, id. at ¶ 2, and an appellate court affirmed the trial court's judgment. Id. at ¶ 3.
 {¶ 14} Thereafter, the Supreme Court of Ohio allowed a discretionary appeal to consider whether Leon "was a `party' to the arbitration regarding his discharge for purposes of R.C. 2711.10." Leon, at ¶ 5-6. The Leon court observed that to resolve the issue presented for review the court was required to "decide whether and under what circumstances an employee has standing to challenge an arbitration award rendered pursuant to the terms of a collective bargaining agreement between the employee's union and employer." Id. at ¶ 6.
 {¶ 15} In support of his claim that he was a "real party in interest," Leon relied upon this court's decision in Barksdale v. Ohio Dept. ofAdm. Serv. (1992), 78 Ohio App.3d 325. In Barksdale, this court reasoned: "Where the employee is the real party in interest with respect to the subject matter of a labor arbitration proceeding, the employee is a `party' under R.C. 2711.10 with standing to challenge an award rendered in such a proceeding." Leon, at ¶ 8, quotingBarksdale, at 329.
 {¶ 16} Finding that Leon's reliance upon Barksdale was not well-taken, the Leon court stated that Barksdale was "a legal anomaly," and further stated that "the Barksdale *Page 7 
test fails to account for the contractual nature of the `personal' rights to which it refers." Leon, at ¶ 9, 10. Besides rejectingBarksdale, the Leon court also rejected the township's proposition that "`[a]n individual employee has no standing to move or petition a court to vacate the results of an arbitration between a union and an employer'" because this proposition "[also] established a blanket rule that operates irrespective of the terms of the collective bargaining agreement." Leon, at ¶ 11.
 {¶ 17} After reviewing Ohio case law and foreign case law, theLeon court proceeded to observe that "the proposition that emerges from these cases is that an aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary." Leon, at ¶ 17.
 {¶ 18} Accordingly, the Leon court held that "when an employee's discharge or grievance is arbitrated between an employer and a union under the terms of a collective bargaining agreement, the aggrieved employee does not have standing to petition a court to vacate the award pursuant to R.C. 2711.10, unless the collective bargaining agreement expressly gives the employee an independent right to submit disputes to arbitration." Id. at ¶ 18; see, also, id. at syllabus.
 {¶ 19} Accordingly, we shall therefore examine the collective bargaining agreement at issue to determine whether this agreement conferred standing upon plaintiff to petition the common pleas court to vacate the adverse arbitration award under R.C. *Page 8 2711.10. See Leon, at ¶ 18; id. at syllabus; see, also, State ex rel.Denlinger v. Douthwaite, Warren App. No. CA2003-04-054, 2004-Ohio-2069, at ¶ 14.
 {¶ 20} "A collective bargaining agreement is a contract, and `[t]he overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties." State ex rel.Kabert v. Shaker Hts. City School Dist. Bd. of Edn. (1997),78 Ohio St.3d 37, 44, quoting TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994),70 Ohio St.3d 271, 276, order clarified in 70 Ohio St.3d 271. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus, following and approving Blosser v. Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus.
 {¶ 21} "Courts are to construe provisions of a collective-bargaining agreement like any contract, without resort to extraneous sources, when the agreement is `clear and unambiguous in its meaning.'" Holthaus v.Cincinnati Bd. of Edn. (1991), 76 Ohio App.3d 443, 447, quotingBelic v. Gen. Motors Corp. (S.D.Ohio 1984), 588 F.Supp. 633, affirmed without reported opinion (C.A.6, 1987), 818 F.2d 866. In Ohio Univ. Bd.of Trustees v. Smith (1999), 132 Ohio App.3d 211, stay denied,85 Ohio St.3d 1445, and dismissed, appeal not allowed, 85 Ohio St.3d 1495, the Fourth District Court of Appeals explained:
 * * * When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d, 262, 264-265; Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain *Page 9 
language special meaning. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501-502.
Id. at 221.
 {¶ 22} However, although a court may find that a contractual provision is subject to multiple interpretations, such a finding by a court does not by itself render a contractual provision to be ambiguous. State v.Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11. InPorterfield, the Supreme Court of Ohio explained:
 In recent years, Ohio courts have devoted many pages to discussions of whether contracts, ballot initiatives, statutes, or even constitutional provisions are ambiguous. * * * However, no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous. Some courts have reasoned that when multiple readings are possible, the provision is ambiguous. * * * The problem with this approach is that it results in courts' reading ambiguities into provisions, which creates confusion and uncertainty. When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling.
Id. (Citations omitted.)
 {¶ 23} Consequently, when examining the collective bargaining agreement between ODRC and the union, we must "objectively and thoroughly" examine this agreement to determine its meaning, and only when a definitive meaning proves elusive should we employ rules for construing ambiguous language. Id.
 {¶ 24} Article 25.01(A)[2] of the collective bargaining agreement between ODRC and the union provides in part: "A grievance is defined as any difference, complaint or *Page 10 
dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement. The grievance procedure shall be the exclusive method of resolving grievances."
 {¶ 25} Division (B) of Article 25.01 provides in part:
 Grievances may be processed by the Union on behalf of a grievant or on behalf of a group of grievants or itself setting forth the name(s) or group(s) of the grievant(s). The Union shall define the members of a group grievance by the Step Three (3) grievance meeting, unless the Union provides evidence that specific and relevant information has been denied which prevents them from defining the group. Either party may have the grievant (or one grievant representing group grievants) present at any step of the grievance procedure and that the grievant is entitled to union representation at every step of the grievance procedure. * * *
(Emphasis added.)
 {¶ 26} Thus, Article 25.01(B) standing alone establishes that the union represents a grievant during the grievance process. Because the collective bargaining agreement is between ODRC and the union, we find that the term "party," as used above in Article 25.01(B), refers to either ODRC or the union. Such an interpretation is also supported by Article 25.01(B)'s careful use of the terms "grievant" and "grievants." We find no language in Article 25.01(B) that provides an employee with the right to invoke arbitration.
 {¶ 27} Article 25.02 establishes steps that are to be taken during the grievance process. Article 25.02 provides in part that "[a] grievance involving a layoff, non-selection *Page 11 
or a discipline shall be initiated at Step Three (3) of the grievance procedure within fourteen (14) days of notification of such action."
 {¶ 28} Under Step Three (3), "[i]f the grievance is still unresolved, a legible copy of the grievance form shall be presented by the Union to the Agency Head or designee in writing * * * Within fifteen (15) days after the receipt of the written grievance, the parties shall meet in an attempt to resolve the grievance unless the parties mutually agree otherwise." (Emphasis added.) Article 25.02 also provides that:
 * * * [A]t the Step Three (3) meeting the grievance may be settled or withdrawn, or a response shall be prepared and issued by the Agency Head or designee, within thirty-five (35) days of the meeting. * * * The response shall be forwarded to the grievant and a copy will be provided to the Union representative who was at the meeting or one who is designated by the Local Chapter. Additionally, a copy of the answer will be forwarded to the Union's Central Office. This response shall be accompanied by a legible copy of the grievance form.
Id. (Emphasis added.)
 {¶ 29} Article 25.02 does not define the term "parties" as used in Article 25.02. However, because the collective bargaining agreement is between ODRC and the union, and because, according to the collective bargaining agreement, the union acts in a representative capacity on behalf of a grievant or grievants, we conclude that the term "parties," as used in the above excerpt, refers to ODRC and the union. Such an interpretation is supported by Article 25.02's distinguishing use of the term "grievant" when discussing Step Three of the grievance process. See, generally, Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus (holding that "[c]ommon words appearing in a written instrument will be given their ordinary *Page 12 
meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument").
 {¶ 30} Step Four provides in part that:
 If the Agency is untimely with its response to the grievance at Step Three (3), absent a mutually agreed to time extension, the Union may appeal the grievance to Step Four (4) requesting a meeting by filing a written appeal and a legible copy of the grievance form to the Deputy Director of the Office of Collective Bargaining within fifteen (15) days of the date of the due date of the Step Three (3) answer. * * *
(Emphasis added.) Step Four (4) also provides in part that:
 If the grievance is not resolved at Step Three (3), or if the Agency is untimely with its response to the grievance at Step Three (3), absent any mutually agreed to time extension, the Union may appeal the grievance to mediation by filing a written appeal and a legible copy of the grievance form to the Deputy Director of the Office of Collective Bargaining with fifteen (15) days of the receipt of the answer at Step Three (3) or the due date of the answer if no answer was given, whichever is earlier.
(Emphasis added.) Step Four further provides: "Either the Office of Collective Bargaining or the Union may advance a grievance directly from Step Four (4) to Step Five (5) if that party believes that mediation would not be useful in resolving the dispute." According to Step Four (4), "[t]he parties shall mutually agree to a panel of at least five (5) persons to serve in the capacity of grievance mediators. * * * The fees and expenses of the mediator shall be shared equally by theparties." (Emphasis added.)
 {¶ 31} Thus, this above excerpt from Step Four of the collective bargaining agreement establishes that the union, as a grievant's representative, may advance the process to mediation. Furthermore, because the term "party" is used in the same sentence with "Office of Collective Bargaining" and "the Union," we conclude that the term *Page 13 
"party," as used in the context of Step Four in the above excerpt, refers either to the "Office of Collective Bargaining" or "the Union," and, as it is used in the above excerpt, the term "party" does not include the grievant.
 {¶ 32} Step Four also provides that:
 Written material presented to the mediator will be returned to the party at the conclusion of the mediation meeting. The comments and opinions of the mediator, and any settlement offers put forth by either party shall not be admissible in subsequent arbitration of the grievance nor be introduced in any future arbitration proceedings.
Id. (Emphasis added.) Step Four further provides that "[t]he disposition of grievances discussed during the mediation meeting will be listed by the representative from the Office of Collective Bargaining on a form mutually agreed to by the parties." (Emphasis added.) Step Four also provides that:
 The parties will consolidate cases for mediation and, whenever possible, schedule the mediation meetings at decentralized locations. A Union staff representative, grievant and a steward or chapter president as designated by the Union may be present at the mediation of a grievance. No more than two (2) of the Union representatives present including the grievant may be on paid leave by the Employer. Each party may have no more than three (3) representatives present at the mediation of a grievance.
(Emphasis added.)
 {¶ 33} Here, the terms "party" and "parties" in the preceding excerpt are undefined. However, because the collective bargaining agreement is between ODRC and the union, we conclude that the terms "party" and "parties," as discussed in the above excerpt concerning Step Four, refer to ODRC and the union individually and collectively. Such a conclusion is supported by the fact that, according to the collective *Page 14 
bargaining agreement, the union is acting in a representative capacity on behalf of a grievant. Such an interpretation also is supported by the careful use of the term "grievant" in the above excerpt. SeeAlexander, supra, at paragraph two of the syllabus.
 {¶ 34} Step Five as discussed in Article 25.02 concerns arbitration. According to the collective bargaining agreement:
 Grievances which have not been settled under the foregoing procedure may be appealed to arbitration by the Union by providing written notice to the Deputy Director of the Office of Collective Bargaining within sixty (60) days of the mediation meeting or the postmarked date of the mediation waiver but no longer than ninety (90) days from the Step Three (3) response. The agencies shall send a copy of the Step Three (3) responses to the OCSEA central office and to the union representative who was at the Step Three (3) meeting or one who is designated by the local chapter.
(Emphasis added.)
 {¶ 35} Thus, Step Five standing alone establishes that the union represents a grievant during arbitration and that the union, not a grievant, may seek arbitration. We find no language in Step Five that provides an employee with the right to invoke arbitration. Moreover, we find no language in Articles 25.03 and 25.04, which concern "arbitration procedures," and "arbitration/mediation panels," respectively, to support a claim that under the collective bargaining agreement at issue an employee has an independent right to invoke arbitration.
 {¶ 36} Plaintiff asserts that Article 25.10 of the collective bargaining agreement, which concerns "non-traditional arbitration," confers party status upon him and, consequently, plaintiff has standing to move to vacate the arbitration decision. Article 25.10 provides: *Page 15 
 The parties agree to utilize a variety of non-traditional arbitration mechanisms. Such mechanisms may include but not be limited to, presentation of argument based on factual stipulations, presentation of argument without factual stipulations, and presentation of more than one case on a given day with bench decisions being orally rendered by the arbitrator. The arbitrator shall issue a written decision to the parties by the end of the hearing day. Decisions issued pursuant to this procedure shall have precedence for progressivity purposes only or unless mutually agreed otherwise by the parties.
 Except for patient/client related cases, the grievances presented to the arbitrator under this Section will consist of disciplinary actions of five (5) days or less, unless mutually agreed otherwise. In disciplinary grievances adjudicated in this forum, there shall be no mediation, and the Employer and the Union are limited to one (1) witness each. The grievant, chapter representative and staff representative are all parties to the proceeding; however, testimony will be limited to either the grievant or the union witness. The arbitrator may ask questions of the witness and/or the grievant.
 The Union and Office of Collective Bargaining may jointly decide to take issue grievances to non-traditional arbitration.
(Emphasis added.)
 {¶ 37} Here, according to the facts of this case, plaintiff's arbitration was not based on a disciplinary action. Rather, the grievance presented to the arbitrator concerned ODRC's failure to promote plaintiff to the rank of Sergeant. Furthermore, in the record before us, we find no evidence that plaintiff engaged in "non-traditional arbitration" as defined in Article 25.10. Consequently, Article 25.10 is inapposite, and plaintiff's reliance upon Article 25.10 to support his claim that the collective bargaining agreement conferred party status upon him is unconvincing.
 {¶ 38} Relying on Stafford v. Greater Cleveland Regional TransitAuth. (Dec. 23, 1993), Cuyahoga App. No. 63663, cause dismissed (1994),69 Ohio St.3d 1426, plaintiff *Page 16 
contends that he has standing to move to vacate the arbitrator's adverse award because the arbitrator captioned his decision using Officer Koehring's name. In Stafford, the Eighth District Court of Appeals stated:
 The issue raised by Stafford's first and ninth assignments of error is whether the trial court erred in denying his motion to vacate the arbitration award. In his first assignment of error, Stafford argues that the trial court erred in finding that he lacked standing to challenge the arbitration award. RTA argues that, under R.C. 2711.10, only parties to the arbitration may seek to vacate the award. RTA claims that since Stafford was not a party to the arbitration, he was not authorized to seek to vacate the award.
 The arbitration committee report lists the parties involved as RTA and Union Local 268. Stafford, as an individual, was not a party to the arbitration. The United States Supreme Court has said that the collective bargaining system subordinates the interests of the individual employee to the collective interests of all employees in the bargaining unit. Hines at 564. In the arbitration process, Stafford was represented by Local 268. The success of the collective bargaining process depends upon the exclusivity of the union's right to represent all employees within its bargaining unit. United Transp. Union, Local 74 v. Consolidated Rail Corp. (1989), 494 U.S. 1051. The establishment of the union as representative necessarily deprives individual employees of the ability to bargain individually. Id.
 This court has held that an individual employee lacks standing to vacate an arbitration award to which his union was a party. See Coleman v. Cleveland City School District (September 4, 1992), Cuyahoga App. No. 62570, unreported. We see no reason to depart from our holding in Coleman. Since Stafford was not a party to the arbitration award, the trial court did not err in finding that he lacked standing to vacate the award. Stafford's first assignment of error is without merit.
Id. *Page 17 
 {¶ 39} We find plaintiff's reliance on Stafford to support his contention that he properly had standing to move to vacate the arbitrator's award is unpersuasive.
 {¶ 40} Relying upon Lepp v. Hazardous Waste Facility Bd. (Sept. 26, 1991), Franklin App. No. 91AP-464; McFaul v. UAW Region 2 (1998),130 Ohio App.3d 111; and State ex rel. Ohio Dept. of Mental Health v.Nadel, 98 Ohio St.3d 405, 2003-Ohio-1632, plaintiff also asserts that, as a public employee, he has standing to challenge the arbitrator's determination.
 {¶ 41} In Lepp, the common pleas court found that Michael Lepp lacked standing under R.C. 2711.09 to seek confirmation of the arbitration award and dismissed his complaint. On appeal to this court, Lepp challenged the common pleas court's determination about standing. TheLepp court found that former R.C. 4117.14(E) and 4117.09(B)(1) were the proper sections to be applied to resolve the issues presented in that case. Id. In Lepp, this court stated:
 While the Ohio case law in this area is scarce, at least one court of appeals has addressed the subject in the context of public employees. In Braswell v. Lucas Metro. Housing Auth. (1985), 26 Ohio App.3d 51, the court held that an employee of the Lucas Metropolitan Housing Authority, now confirmed to be a public employer subject to R.C. Chapter 4117, Cincinnati Metro. Hous. Auth. v. State Emp. Relations Bd. (1990), 53 Ohio St.3d 221, could sue her employer for breach of the collective bargaining agreement between her union and employer. Inasmuch as R.C. 4117.14 and 4117.09 authorize parties to the agreement both to bring suit for breach of the collective bargaining agreement, as well as to enforce arbitration awards, the Braswell decision suggests that a public employee is a party to the agreement with standing to sue in the common pleas court not only to redress violations of the collective bargaining agreement, but also to enforce arbitration awards rendered in his or her favor.
Id. (Footnote omitted.) *Page 18 
 {¶ 42} The Lepp court further stated:
 Whether or not Braswell was decided in the context of R.C. Chapter 4117, the result reached therein is consistent with the language of R.C. 4117.09 and 4117.14(E), as well as numerous federal cases interpreting federal labor law. * * *
 * * * [F]ederal courts, applying Section 185(A), Title 29, U.S. Code, Section 301 of the Federal Labor Management Relations Act, have allowed employees to bring suits to enforce arbitration awards, at times contrasting the distinction between actions to enforce an arbitration award and those to vacate an arbitration award * * * .
 While we recognize that the language of Section 185(A), Title 29, U.S. Code, is not identical to that of R.C. 4117.09, the factors enunciated in the federal cases are persuasive herein. Construing these policy considerations with the language of R.C. 4117.09 and 4117.14(E) stated above, we find that under those sections of R.C. Chapter 4117, plaintiff has standing to enforce the arbitration award rendered in his favor as a result of the actions of the union in the grievance procedure, especially in the absence of union objection to plaintiff's action. Further, given the similarity in language between R.C. 2711.09 (party to the arbitration) and the pertinent sections of R.C. Chapter 4117 (party to the agreement), a finding of standing under the latter supports standing under the former. Indeed plaintiff was the real party in interest to the arbitration. * * *
Id.
 {¶ 43} Lepp is distinguishable from this case. First, inLepp, this court found that former R.C. 4117.14(E) and 4117.09(B)(1) were the proper sections to be applied to resolve the issues presented in that case. Here, we need not apply those sections to resolve the issue raised by plaintiff. Second, this court issued Lepp more than 12 years before the Supreme Court of Ohio issued Leon, a case that squarely considered "whether and under what circumstances an employee has standing to challenge an arbitration *Page 19 
award rendered pursuant to the terms of a collective bargaining agreement between the employee's union and employer." Leon, at ¶ 6. Third, Lepp was relied on by this court in Barksdale, supra, see,Barksdale, at 328, and Barksdale has been criticized by theLeon court as "a legal anomaly." Leon, at ¶ 9. Accordingly, plaintiff's reliance upon Lepp is unconvincing.
 {¶ 44} Plaintiff's reliance upon McFaul, supra, also is unconvincing. Unlike the facts of this case, McFaul concerned whether a labor conciliator exceeded his authority under former R.C. 4117.14. Specifically, the McFaul court was presented with this single question of law: "Did the conciliator exceed his authority in rendering an award that was not a final settlement offer of either of the parties,i.e., either three percent or five percent?" Id. at 114. Thus,McFaul is factually distinguishable from this case, and we find plaintiff's reliance upon McFaul is unpersuasive to support his claim that plaintiff, by means of his status as a public employee, properly had standing to move to vacate the arbitration decision.
 {¶ 45} Finally, plantiff's reliance upon Nadel, supra, also is unpersuasive In Nadel, Dr. Stewart M. Harris, Jr.'s employer, an institution operated by the Ohio Department of Mental Health ("ODMH"), terminated Dr. Harris after several female coworkers asserted sexual harassment allegations against him. Id. at ¶ 1. At the time of his termination, Dr. Harris was a member of a collective-bargaining unit. Id. Dr. Harris filed a grievance challenging his termination, and the matter ultimately was submitted to arbitration. Id. at ¶ 2. After conducting an evidentiary hearing, the arbitrator denied Dr. Harris's grievance. Id. *Page 20 
 {¶ 46} Claiming that the union failed to fairly and adequately represent him at the arbitration hearing, Dr. Harris filed an unfair-labor-practice charge against the union with the State Employment Relations Board ("SERB"). Id. at ¶ 3. SERB dismissed Dr. Harris's charge and denied a motion for reconsideration. Id. at ¶ 4.
 {¶ 47} Rather than seeking relief in mandamus, Dr. Harris filed an application in the common pleas court to vacate the arbitration award under R.C. 2711.10. Id. at ¶ 5. ODMH moved to dismiss Dr. Harris's application, and Dr. Harris moved to amend his application. Id. at ¶ 6. The common pleas court denied ODMH's dismissal motion and "determined that Dr. Harris had standing to vacate the arbitration award because he had alleged that the union breached its duty of fair representation." Id. at ¶ 8.
 {¶ 48} ODMH then moved for summary judgment. Id. at ¶ 9. A magistrate of the common pleas court denied ODMH's motion for summary judgment, and this decision was later adopted by the common pleas court. Id. at ¶ 10.
 {¶ 49} Thereafter, in an appellate proceeding, ODMH sought a writ of prohibition against the common pleas court judge and the court's magistrate. Id. at ¶ 11. The common pleas court judge and the court's magistrate moved to dismiss ODMH"s complaint in prohibition. Id. at ¶ 11. The appellate court denied the motion to dismiss and granted a writ of prohibition. Id. at ¶ 12. Upon the common pleas court's judge and its magistrate's appeal as of right, the Supreme Court of Ohio heard the matter. Id. at ¶ 13.
 {¶ 50} Unlike Leon, the Nadel court did not squarely consider "whether and under what circumstances an employee has standing to challenge an arbitration award rendered pursuant to the terms of a collective bargaining agreement between the employee's union and employer."Leon, at ¶ 6. Rather, in Nadel, the Supreme Court of *Page 21 
Ohio considered (1) whether laches applied, id. at ¶ 14-17, and (2) whether the appellate court erred by concluding that the common pleas judge and its magistrate lacked jurisdiction over Dr. Harris's application to vacate the arbitration award. Id. at ¶ 18-25.
 {¶ 51} In Nadel, the Supreme Court of Ohio ultimately concluded that the common pleas court judge and the court's magistrate "patently and unambiguously" lacked jurisdiction over Dr. Harris's claims, id. at ¶ 25, and that the court of appeals correctly granted a writ of prohibition. Id. In reaching this conclusion, the court remarked that "[t]he mere fact that Dr. Harris couched the allegations of his application and amended application in language comparable to that found in R.C. 2711.10 is insufficient to vest jurisdiction in the common pleas court." Id. at ¶ 21. "R.C. 4117.11(B)(6) specifies that it is an unfair labor practice for an employee organization to `[f]ail to fairly represent all public employees in a bargaining unit.'" Id. at ¶ 24.
 {¶ 52} Accordingly, we find Nadel distinguishable and not controlling under the facts of this case
 {¶ 53} In summary, we find that Leon, supra, squarely addresses the issue raised by plaintiff in his sole assignment of error. After objectively and thoroughly examining the excerpt of the collective bargaining agreement within the record, and for the reasons set forth above, we do not find that the collective bargaining agreement at issue expressly gives plaintiff an independent right to submit his dispute to arbitration under the facts and circumstances of this case. Therefore, applying Leon, we conclude that, under the facts and circumstances of this case, the collective bargaining agreement at issue does not confer party status to plaintiff for purposes of appealing an adverse arbitrator's award under R.C. 2711.10. See Leon, at ¶ 18; id. at syllabus. *Page 22 
 {¶ 54} We therefore hold that plaintiff lacks standing to petition the common pleas court to vacate the adverse arbitrator's award under R.C.2711.10. We also hold that the common pleas court correctly dismissed plaintiff's motion for lack of standing. Furthermore, plaintiff was not entitled to have the common pleas court determine the merits of his motion to vacate. See Cuyahoga Cty. Bd. of Commrs., at ¶ 22. As a consequence, the common pleas court did not reach the merits of plaintiff's motion; therefore, in this appeal, we are not required to review plaintiff's claim that the arbitrator executed his power so imperfectly that a mutual, final, and definite award was not made. See, generally, State v. Peagler (1996), 76 Ohio St.3d 496, 501 (stating that "[a] court of appeals cannot consider [an] issue for the first time without the trial court having had an opportunity to address the issue"); Siders v. Reynoldsburg School Dist. (1994), 99 Ohio App.3d 173,193, citing State ex rel. Park Invest. Co. v. Bd. of Tax Appeals (1972),31 Ohio St.2d 183, 185 (wherein this court stated that "[i]t is well settled that this court does not have the constitutional or statutory authorization to issue advisory opinions").
 {¶ 55} Accordingly, because the common pleas court properly found that plaintiff lacked standing, we overrule plaintiff's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN and KLATT, JJ., concur.
[1] R.C. 2711.16 provides:
 Jurisdiction of judicial proceedings provided for by sections 2711.01 to 2711.14, inclusive, of the Revised Code, is generally in the courts of common pleas, and actions and proceedings brought under such sections shall be brought either in the court of common pleas of the county designated by the parties to the arbitration agreement as provided in section 2711.08 of the Revised Code, which designation is an irrevocable consent of the parties thereto to such jurisdiction, or, whether or not such designation has been made, in the court of common pleas of any county in which a party in interest resides or may be summoned, or if any party in interest is a corporation, in any county in which such corporation is situated, or has or had its principal office or place of business, or in which such corporation has an office or agent, or in any county in which a summons may be served upon the president chairman or president of the board of directors or trustees or other chief officer.
Here, the caption of plaintiff's motion indicates that plaintiff lives in Ashville, Ohio and also designates that ODRC, the adverse party in interest, is located in Columbus, Ohio. We take judicial notice that Ashville, Ohio, is in Pickaway County, Ohio, and that ODRC has its principal office in Franklin County, Ohio. See, generally, Evid.R. 201(B) and (C). Accordingly, construing R.C. 2711.16, we find that plaintiff's motion was properly filed in the Franklin County Court of Common Pleas.
[2] With his motion to vacate the arbitrator's adverse award, plaintiff appended an excerpt of a purported collective bargaining agreement between ODRC and plaintiff's union. Absent any objection by ODRC as to the authenticity of this excerpt, and absent any claim by ODRC that this excerpt is prejudicially incomplete, we conclude that we may properly rely on this filing in our disposition of plaintiff's appeal. See, e.g., Oakley v. Reiser (Dec. 21, 2001), Athens App. No. 01CA40, at fn. 2 (stating that "[d]ocuments [that are appended to summary judgment reply memorandum] which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and generally should not be considered by the trial court. * * * Nevertheless, this court may consider unsworn, uncertified, or unauthenticated evidence if neither party objected to such evidence during the trial court proceedings."); see, also, Churchwell v. Red RoofInns, Inc. (Mar. 24, 1998), Franklin App. No. 97APE08-1125, at fn. 1. *Page 1